IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

_____

**BETH FAY**,
*Petitioner*,

*v.*

**THE HONORABLE DEWAIN D. FOX, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,**
*Respondent Judge*,

*and*

**STATE OF ARIZONA; JORDAN MICHAEL HANSON,**
*Real Parties in Interest*.

_____

No. CR-20-0306-PR
Filed September 20, 2021

_____

Appeal from the Superior Court in Maricopa County
The Honorable Dewain D. Fox, Judge
No. CR2015-005451-001
**REVERSED**

Order of the Court of Appeals, Division One
1 CA-SA 20-0123
**VACATED AND REMANDED**

_____

COUNSEL:

Randall S. Udelman (argued), Arizona Crime Victim Rights Law Group, Scottsdale, Attorney for Beth Fay

Treasure VanDreumel (argued), Law Office of Treasure VanDreumel, PLC, Phoenix; Lori L. Voepel, Jones, Skelton & Hochuli, PLC, Phoenix, Attorneys for Jordan Michael Hanson

1

Allister Adel, Maricopa County Attorney, Phoenix, Attorneys for State of Arizona

Colleen Clase, Arizona Voice for Crime Victims, Phoenix, Attorney for Amici Curiae Arizona Voice for Crime Victims, Inc. and National Crime Victim Law Institute

David J. Euchner (argued), Pima County Public Defender's Office, Tucson; Madeline A. Mayer, Maricopa County Public Defender's Office, Phoenix, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

Mark Brnovich, Arizona Attorney General, Brunn (Beau) W. Roysden III, Solicitor General, Lacey Stover Gard, Deputy Solicitor General/Chief of Capital Litigation, Ginger Jarvis, Assistant Attorney General, Capital Litigation Section, Phoenix, Attorneys for Amicus Curiae Arizona Attorney General

———————

JUSTICE BOLICK authored the opinion of the Court, in which JUSTICES LOPEZ and BEENE and JUDGE BREARCLIFFE joined.[*]  VICE CHIEF JUSTICE TIMMER, joined by CHIEF JUSTICE BRUTINEL, dissented.[**]

———————

JUSTICE BOLICK, opinion of the Court:

¶1        In this case, we hold that a crime victim has a constitutional and statutory right to be heard on the merits of a defendant's motion for a delayed appeal of a restitution order.

---

[*] Justice William G. Montgomery has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Sean E. Brearcliffe, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

[**] Although Justice Andrew W. Gould (Ret.) participated in the oral argument in this case, he retired before issuance of this opinion and did not take part in its drafting.

## BACKGROUND

¶2          On September 5, 2015, defendant Jordan Michael Hanson allowed Carson Dumbrell to enter his home.  Shortly after, Hanson retrieved a loaded handgun from his bedroom and asked Dumbrell to leave.  When Dumbrell refused, Hanson repeatedly punched him.  During their fight, Hanson shot and killed Dumbrell.

¶3          On February 16, 2017, a jury convicted Hanson of second-degree murder.  Beth Fay is Dumbrell's mother, and therefore a victim under Arizona law.  Ariz. Const. art. 2, § 2.1(C).  On May 24, 2017, Hanson was sentenced to twelve years in prison.  The next day, Hanson filed a Notice of Appeal.  The trial court retained jurisdiction over restitution.

¶4          On March 21, 2018, Fay filed a motion requesting a Criminal Restitution Order ("CRO") pursuant to A.R.S. § 13-805(B).  She requested $570,159.45 total in restitution.  Hanson filed a response opposing the CRO on May 8, 2018.  On October 10, 2018, Fay and Hanson submitted a Joint Report Regarding Restitution Issues.

¶5          On November 8, 2018, the court of appeals issued a Memorandum Decision rejecting Hanson's direct appeal of his conviction.

¶6          On January 23, 2019, Fay and Hanson submitted a Joint Report Regarding Remaining Restitution Issues.  In that report, both Fay and Hanson stated that they had conferred and agreed that the trial court "may enter an award of restitution in Beth Fay's favor in the amount of at least $558,117.45."

¶7          On May 20, 2019, the trial court entered a CRO awarding Fay $562,980.45 in restitution.  Hanson did not appeal the court's order.

¶8          On January 7, 2020, eight months after the court entered the CRO, Hanson filed a Limited Petition for Post-Conviction Relief (Delayed Appeal Request) and Request to Hold Further PCR Proceedings in Abeyance ("Limited Petition") pursuant to Arizona Rule of Criminal Procedure 32.1(f).  In his petition, Hanson sought an expedited ruling on his request to proceed with a delayed appeal of the CRO while holding his

claim of ineffective assistance of counsel ("IAC") in abeyance pending exhaustion of his appellate remedies.

¶9            On January 13, 2020, Fay filed a Response to [Hanson's] Limited Petition, and Hanson then filed on January 21, 2020 a Motion to Strike [her response] and Prohibit Future Responsive Pleadings Filed by Victim's Counsel and to Adjust Reply Deadline.  The same day, Hanson filed an Amended Petition for Post-Conviction Relief, requesting to include his IAC claim in his initial post-conviction relief proceeding.  Thereafter, Fay filed a Response to [Hanson's] Motion to Strike Pleadings Filed by Victim's Counsel and to Adjust Reply Deadline, arguing that Hanson was attempting to use post-conviction relief to walk away from his prior agreement on restitution.  The trial court initially denied Hanson's Motion to Strike, finding that pursuant to A.R.S. § 13-4402(A), a victim's right relating to restitution continues to be enforceable by the court until restitution is paid.

¶10           Following the ruling, Hanson filed an objection, complaining that the trial court had denied his Motion to Strike before he had a chance to reply to Fay's Response and requesting reconsideration of the trial court's ruling.  On April 15, 2020, the trial court reversed its decision.  In its ruling on Hanson's objection, the court stated in part:

> The drafters of the Arizona Constitution, statutes and rules of criminal procedure all knew how to grant a victim the "right to be heard" when that was their intent.  Indeed, as set out above, they expressly did so for certain types of proceedings. If the drafters had intended to give victims a general right to be heard in post-conviction relief proceedings, or specifically on claims for permission to take a delayed appeal from a CRO or for a new trial for IAC, the drafters could—and presumably would—have done so expressly.  As much as the Court respects victim's rights, the Court is tasked with enforcing the law as written.
>
> . . .
>
> **IT IS . . . ORDERED** granting Petitioner's requests for relief in the Objection/Motion for Reconsideration, specifically

4

> (i) striking the Victims' Response to the Limited Petition, and
> (b) [sic] precluding the Victims from filing a response to the Amended Petition.

**¶11** Fay sought relief by filing a Petition for Special Action in the court of appeals. The court of appeals accepted jurisdiction but denied relief. In its order, it stated in part:

> We discern no constitutional, statutory, or rule-based right for Fay to weigh in on whether Hanson is at fault for this delay. While a delayed appeal could impact Fay's ability "to receive <u>prompt</u> restitution," . . . her general right to receive prompt restitution does not trump Hanson's specific right to a delayed appeal upon demonstration that he did not cause the delay.

The court of appeals limited its ruling to Fay's attempt to be heard on the motion for delayed appeal, not on the amended petition.

**¶12** The State and Fay filed separate Petitions for Review. We granted review of Fay's Petition to determine whether a victim is entitled to be heard on a Rule 32.1(f) request for a delayed appeal concerning restitution because the issue is a matter of statewide concern that will likely recur. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶13** This case involves the interpretation of rules, statutes, and constitutional provisions, which the Court reviews de novo. *State v. Hansen*, 215 Ariz. 287, 289 ¶ 6 (2007).

**¶14** Through the voters' enactment of the Victims' Bill of Rights ("VBR") in 1990, Ariz. Const. art. 2, § 2.1, our state recognized constitutional protections for crime victims that are among the nation's most sweeping. These rights do not limit or supplant constitutional protections for those accused of crimes, *see, e.g.*, *R.S. v. Thompson*, 251 Ariz. 111, 118 ¶ 20 (2021), but establish important protections for victims in the criminal justice system. The Victims' Bill of Rights empowers the legislature to enact

procedural and substantive laws to "define, implement, preserve and protect the rights guaranteed to victims," Ariz. Const. art. 2, § 2.1(D), and this Court retains residual constitutional authority to create rules of criminal procedure. *State v. Reed*, 248 Ariz. 72, 78 ¶ 20 (2020).

¶15        To recap the relevant facts, after Hanson unsuccessfully appealed his murder conviction, he and the victim, Fay, entered into an agreement regarding restitution, and the trial court entered a restitution award in line with that agreement. Eight months later, Hanson filed a post-conviction relief petition to contest that award based on Rule 32.1(f), which allows such delayed relief if "the failure to timely file a notice of appeal was not the defendant's fault." Ariz. R. Crim. P. 32.1(f). Fay sought to weigh in on the merits of the Limited Petition, that is, to argue that Hanson was not entitled to file a delayed appeal. After initially allowing Fay to be heard on the matter, the trial court reconsidered and struck her response. The court of appeals affirmed that decision.

¶16        Fay argues, and we agree, that Hanson's effort to file a delayed appeal implicates multiple rights expressly protected by the Victims' Bill of Rights, including the right to due process, Ariz. Const. art. 2, § 2.1(A); the right to receive "prompt restitution" from the person convicted of the crime that caused the victim's injury, *id.* at (A)(8); and the right to a "prompt and final conclusion of the case after the conviction and sentence," *id.* at (A)(10). We will refer to these as rights to due process, prompt restitution, and finality. Fay argues that she has a right to be heard on Hanson's motion to file a delayed appeal because it will delay the restitution awarded to her of right, and the award could be extinguished altogether on appeal.

¶17        The court of appeals concluded that Fay's "general right to receive prompt restitution does not trump Hanson's specific right to a delayed appeal upon demonstration that he did not cause the delay." This is an inapt characterization of the issue. Fay does not seek to invoke her constitutional rights as a crime victim to "trump" Hanson's right under Rule 32.1(f) to file a delayed appeal. The only issue that the trial court will consider is whether Hanson satisfies the standard under that rule, and Fay's constitutional rights are irrelevant to that determination. Rather, the narrow question before this Court is whether Fay has a right to be heard on the question of whether Hanson is entitled to file a delayed appeal.

**¶18**            The trial court struck Fay's Response on the ground that she lacks standing to be heard on Hanson's Limited Petition. Specifically, the court noted that the drafters of the Victims' Bill of Rights and implementing statutes and rules set forth specific instances in which victims have a right to be heard. By implication, the court held, victims do not have a right to be heard in any setting not expressly provided. Thus, for example, a victim can be heard on the *amount* of restitution, as statutorily provided in A.R.S. § 13-4437(E), or on a modification of a probation term that will substantially affect restitution, Ariz. R. Crim. P. 39(b)(7)(F), but not on a limited petition that could delay and ultimately even eliminate a restitution award.

**¶19**            Such an anomalous result is not required. To properly interpret a constitutional provision requires that it be viewed in its context as a whole. *Morrissey v. Garner*, 248 Ariz. 408, 410 ¶ 8 (2020) ("We examine constitutional language in its overall context to effectuate its purpose."). "Such context may include a contemporaneous preamble or statement of purpose and intent, which we will consider even where the text is not ambiguous." *Redgrave v. Ducey*, No. CV-20-0082-CQ, 2021 WL 3673222, at *5 ¶ 22 (Ariz. Aug. 19, 2021).

**¶20**            By its terms, the Victims' Bill of Rights is an intended baseline, not a ceiling, for the rights of crime victims. *See, e.g.*, Ariz. Const. art. 2, § 2.1(E) ("The enumeration in the constitution of certain rights for victims shall not be construed to deny or disparage others granted by the legislature or retained by victims."). It expressly recognizes the right of crime victims to "have *all* rules governing criminal procedure . . . in *all* criminal proceedings protect victims' rights." *Id.* at (A)(11) (emphasis added); *see also Slayton v. Shumway*, 166 Ariz. 87, 92 (1990) (limiting application of this provision to rules directly addressing victims).

**¶21**            Moreover, the legislature has directed that its statutes "shall be liberally construed to preserve and protect the rights to which victims are entitled." A.R.S. § 13-4418. The right to be heard in this context is clearly contemplated by § 13-4437(A). That provision declares that "[t]he rights enumerated in the victims' bill of rights, . . . any implementing legislation[,] or court rules belong to the victim." Specifically, "[t]he victim has standing to seek an order . . . or to file a notice of appearance . . . seeking to enforce any right or to challenge an order denying any right guaranteed to victims." *Id.* Even without liberally construing victims' rights, as the

statute commands, this statute expressly and very broadly confers standing upon a victim to be heard in a matter that is directly traceable to those rights.

¶22　　　　Unlike in federal courts, where it is a constitutional prerequisite, standing in Arizona is a prudential consideration. *Bennett v. Napolitano*, 206 Ariz. 520, 525 ¶ 19 (2003). To establish standing, a plaintiff must show a palpable injury from the challenged conduct. *Id.* at 524 ¶ 16. No injury is more palpable or direct than infringement of a constitutional right. *See, e.g.*, *Baker v. Carr*, 369 U.S. 186 (1962).

¶23　　　　The determination of whether Hanson may proceed with a delayed appeal of the restitution order will directly impact Fay's rights to due process, prompt restitution, and finality. The latter two are substantive rights. Should Hanson prevail in his effort to present a delayed appeal, it will have the inevitable effect of delaying restitution and postponing finality. But for the pending motion, the issue of restitution would be settled.

¶24　　　　The victim's right to due process attaches to those substantive rights. The "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted). That is precisely what is at stake here. Protecting the right to prompt restitution, and the finality of that award, requires that Fay have the opportunity to be heard on the threshold determination of whether Hanson may proceed with a delayed appeal under Rule 32.1(f).

¶25　　　　The two cases Hanson principally relies upon are inapplicable. In *State v. Reed*, we struck down the section of a statute that required dismissal of a pending appeal upon a defendant's death. 248 Ariz. at 80 ¶ 27. The State argued that the statute was authorized to vindicate the protections of the Victims' Bill of Rights. *Id.* at 79 ¶ 23. We held that such authorization was limited to rights that are created by the Victims' Bill of Rights and that are unique and peculiar to crime victims. *Id.* at 80 ¶ 27. Here, no statutes are challenged, and therefore we are not confronted with the issue we addressed in *Reed*.

**¶26** Moreover, our statement that the right to prompt restitution under the Victims' Bill of Rights "does not guarantee victims any particular appellate disposition" since appellate scrutiny "may result in reversal or modification of the order," *id.* at 79 ¶ 24, does not bear on the issue we address here. The issue is simply whether a victim may be *heard* on the merits of a motion for a delayed appeal of a restitution order under the facts of this case.[1] Regardless of the particular appellate disposition of Hanson's request for a delayed appeal—i.e., whether it is granted (thus affecting restitution) or denied (thus maintaining the status quo)—Fay has the right at least to be heard on the matter.

**¶27** In *State v. Lamberton*, the Court ruled that a victim could not file a petition for review, separate from the State, of an order granting a defendant's petition for post-conviction relief. 183 Ariz. 47, 51 (1995). The Court held that crime victims are not "parties" to criminal proceedings, and that the victim was not aggrieved because the trial court order did not "operate to deny her some personal or property right, nor does it impose a substantial burden upon her." *Id.* at 49–50. The Court concluded that "[w]hile it is true that a major purpose of the VBR is to give victims the right to be heard at 'criminal proceedings,' we cannot conclude that victims are 'parties' with the right to file their own petitions for review." *Id.* at 49.

**¶28** This case implicates the right to be heard, not the party status that was at issue in *Lamberton*. Fay is not seeking to initiate anything but merely to be heard on a matter, initiated by Hanson, that directly affects her constitutional rights. The motion for delayed appeal is aimed squarely at the restitution award, a right that is just as squarely conferred by the Constitution. Absent permission to file a delayed appeal, Fay's right to restitution could not be disturbed. Hence, she has a direct stake in the outcome of the Limited Petition and a right to be heard on whether it should be granted.

**¶29** Neither Hanson nor the courts below assert any prejudice to Hanson if the victim is allowed to be heard. Regardless of whether Fay participates, the petition will be determined solely by whether Hanson

---

[1] The victim does not contend that Rule 32.1(f) categorically violates a victim's right to prompt restitution, only that she has the right to be heard in this context.

satisfies the rule's standard. But given the impact of that determination on Fay's constitutional rights, she must be given an opportunity to be heard.

¶30        Whether the right to be heard applies is context specific. It depends upon whether a victim's express rights are directly implicated by the matter at issue. *See* § 13-4437(A). Here, we hold only that a victim has a right to be heard on the merits of a Rule 32.1(f) motion for a delayed appeal to contest a restitution award. We leave to the courts below to decide in the first instance the appropriate scope of participation in this and any subsequent proceedings.

**CONCLUSION**

¶31        We vacate the court of appeals decision, which dealt only with the limited post-conviction relief petition to file a delayed appeal, and reverse the trial court judgment on that issue. The court of appeals appears to have erroneously concluded that the trial court did not rule on whether Fay could be heard on the amended petition for post-conviction relief, which raises different issues. In fact, the trial court precluded Fay from filing a response to the amended petition. Hence, we remand to the court of appeals for determination of that issue before the case is returned to the trial court to proceed in accordance with this opinion.

TIMMER, VCJ., joined by BRUTINEL, CJ., dissenting.

¶32 This Court has long held that victims are not "parties" to a criminal prosecution. *See State v. Lamberton*, 183 Ariz. 47, 49–50 (1995). The majority holds that a crime victim has standing to respond to a defendant's request for a delayed appeal of a criminal restitution order because that motion "implicates" the victim's constitutional rights to prompt receipt of restitution and a prompt and final conclusion of the case. *See supra* ¶¶ 16, 23. In doing so, the majority takes a giant leap toward effectively conferring party status on victims by broadening their rights in a manner not contemplated by our constitution, statutes, or rules. We respectfully dissent.

¶33 Neither the Victims' Bill of Rights, Ariz. Const. art. 2, § 2.1 ("VBR"), the Victims' Rights Implementation Act, A.R.S. §§ 13-4401 to -4443 ("VRIA"), nor the Arizona Rules of Criminal Procedure authorize Fay to object to Hanson's request for a delayed appeal of the criminal restitution order. The VBR guarantees victims the right "[t]o be heard" in only four proceedings, none of which concerns a request for a delayed appeal. *See* Ariz. Const. art. 2, § 2.1(A)(4) (granting a right "[t]o be heard at any proceeding involving a post-arrest release decision, a negotiated plea, and sentencing"); *id.* § 2.1(A)(9) (granting a right "[t]o be heard at any proceeding when any post-conviction release from confinement is being considered"). The VRIA also confers rights on victims to be heard at certain specific proceedings but, again, nothing concerns a request for a delayed appeal. *See, e.g.*, A.R.S. §§ 13-4414(A) (post-conviction release), -4440(A) (determination of factual innocence in identity-theft situations), -4441(A) (restoration of the right to possess a firearm). Similarly, our court rules provide victims the right to be heard at various criminal proceedings, but none relate to a delayed appeal. *See* Ariz. R. Crim. P. 39(b)(7)(A)–(I). Indeed, Rule 32.9 authorizes only "[t]he State" to respond to a request for a delayed appeal. *See* Ariz. R. Crim. P. 32.9(a).

¶34 Our colleagues reach a different result, reasoning that "[t]he right to be heard [on a request for a delayed appeal] is clearly contemplated by A.R.S. § 13-4437(A)." *See supra* ¶ 21. But this provision does not itself grant rights to victims. It declares that rights enumerated in the VBR "belong to the victim" and grants the victim standing "to enforce any right or to challenge an order denying any right guaranteed to victims."

11

§ 13-4437(A). As just explained, however, no provision of law or rule grants, much less guarantees, victims a right to contest a defendant's request for a delayed appeal, so § 13-4437(A) does not apply here.

¶35    The majority finds authority in the VBR's provisions guaranteeing victims the rights to prompt receipt of restitution and a prompt and final conclusion of the case. *See supra* ¶¶ 16, 23. But neither provision guarantees a right to be heard on a request for a delayed appeal of a criminal restitution order. *See* Ariz. Const. art. 2, § 2.1(A)(8) (granting the right "[t]o receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury"); *id.* § 2.1(A)(10) (granting the right "[t]o a speedy trial or disposition and prompt and final conclusion of the case after the conviction and sentence"). Nevertheless, the majority reasons that because a delayed appeal may affect the timing of restitution payments and case closure, § 13-4437(A) grants Fay standing to oppose Hanson's request for a delayed appeal. *See supra* ¶ 23 ("Should Hanson prevail in his effort to present a delayed appeal, it will have the inevitable effect of delaying restitution and postponing finality.").

¶36    The majority's analysis lacks any tether to the VBR and § 13-4437(A). Fay is not "enforc[ing] any right" by seeking to oppose Hanson's request for a delayed appeal. *See* § 13-4437(A). Granting the request to bring an appeal will not vacate or modify Fay's restitution order; if that were the case, we agree Fay would have standing to be heard. *See* § 13-4437(E) ("[T]he victim has the right to present evidence or information and to make an argument to the court, personally or through counsel, *at any proceeding to determine the amount of restitution* pursuant to § 13-804." (emphasis added)). Even though a delayed appeal has the potential to lengthen the time before payment of restitution or the case finally concludes, Fay has no right to preserve her criminal restitution order by objecting to the filing of an appeal that is authorized by our rules. *See State v. Reed*, 248 Ariz. 72, 79 ¶ 24 (2020) (concluding that a victim's right to prompt restitution "contemplates the entry of a restitution order that is subject to appellate scrutiny, which may result in reversal or modification of the order" and "does not guarantee victims any particular appellate disposition"); Ariz. R. Crim. P. 32.1(f) (authorizing a defendant to request post-conviction relief in the form of a delayed appeal if "the failure to timely file a notice of appeal was not the defendant's fault"). And whether Fay objects to the eight-month delay or is impacted by it has no bearing on

12

whether Hanson was at fault for missing the appeal deadline and is therefore entitled to file a delayed appeal. *See* Ariz. R. Crim. P. 32.1(f).

¶37 We are troubled by the implications of today's holding, which nudges victims into party status. *Every* issue raised in a post-conviction relief proceeding "implicates" a victim's rights to prompt restitution and finality because such relief, for example, a new trial or sentencing proceeding, would result in delays. Does a victim therefore also have the right to respond to the defendant's request for a delayed appeal of the guilt judgment? *See* Ariz. R. Crim. P. 32.1(f). Or, for that matter, could a victim respond to a defendant's petition for post-conviction relief based on ineffective assistance of counsel or the discovery of new material facts? *See* Ariz. R. Crim. P. 32.1(a), (e). Apparently so after today's decision. No principled reason exists for limiting the holding here to responding to requests for a delayed appeal of a criminal restitution order. And the majority offers none. From here forward, a victim can act as a "second prosecutor" whenever a defendant raises an issue or seeks relief that may affect any rights guaranteed to victims. This result, which was never contemplated by the VBR or the VRIA, is unfair.

¶38 The voters, the legislature, and this Court have demonstrated the ability to specify when a victim has a right "to be heard." By bestowing that right on victims when their rights are "implicated," the majority upsets the carefully crafted balance between the rights of victims and the rights of defendants and effectively elevates victims to party status, at least in post-conviction relief proceedings. We dissent.