IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

―――――――――――――――

ADRIAN GILBERT DOMINGUEZ,
*Petitioner*,

*v.*

HON. D. DOUGLAS METCALF, JUDGE OF THE SUPERIOR COURT
OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF PIMA,
*Respondent*,

*and*

THE STATE OF ARIZONA,
*Real Party in Interest*.

No. 2 CA-SA 2023-0023
Filed May 24, 2023

―――――――――――――――

Special Action Proceeding
Pima County Cause No. CR20202117001

**JURISDICTION ACCEPTED; RELIEF GRANTED**

―――――――――――――――

COUNSEL

Megan Page, Pima County Public Defender
By David J. Euchner and Thomas A. Knauer, Assistant Public Defenders,
Tucson
*Counsel for Petitioner*

Laura Conover, Pima County Attorney
By Maile Belongie, Deputy County Attorney, Tucson
*Counsel for Real Party in Interest*

---

**OPINION**

---

Judge Gard authored the opinion of the Court, in which Vice Chief Judge Staring and Judge Eckerstrom concurred.

---

G A R D, Judge:

**¶1**         Adrian Dominguez seeks special action review of the respondent judge's order taking him into custody under Rule 7.2(c), Ariz. R. Crim. P., after entering a plea of guilty except insane.  Because that provision applies only to defendants likely to be sentenced to imprisonment, which is not the same as commitment to a secure mental health facility, we accept special action jurisdiction and grant relief.

**¶2**         In March 2023, Dominguez pled guilty except insane to manslaughter and leaving the scene of an accident that caused death or serious physical injury.  Dominguez was not in custody at the time of his change-of-plea hearing.  After accepting Dominguez's plea, the respondent judge ordered that he be "held in custody without bond pending [s]entencing."  The respondent denied Dominguez's motion to reconsider, stating "commitment to the secure state mental health facility is within the term of imprisonment as that term is used in the rule."  This petition for special action followed.  We granted Dominguez's request to stay the order that he be taken into custody.  The respondent later committed Dominguez to the Arizona State Hospital (ASH), to which Dominguez has self-reported.

**¶3**         Dominguez has no remedy by appeal, and our review by special action is therefore appropriate.  *See Star Publ'g Co. v. Bernini*, 228 Ariz. 490, ¶ 3 (App. 2012); *see also* Ariz. R. P. Spec. Act. 1(a).  The question presented in this case is moot, however, because Dominguez was committed to ASH.  This court normally will not consider moot issues. *See Star Publ'g Co.*, 228 Ariz. 490, ¶ 3.  But because this issue is of "great public importance" and is "likely to be repeated in future cases," we accept special action jurisdiction.  *Id.*

**¶4**         We review de novo the interpretation of a rule or statute.  *Fay v. Fox*, 251 Ariz. 537, ¶ 13 (2021).  We begin with the language of the rule or statute and, "when the language is clear and unequivocal, it is determinative of the [rule or] statute's construction."  *See State v. Brearcliffe*,

___ Ariz. ___, ¶ 22, 525 P.3d 1085, 1091 (2023) (quoting *State v. Hansen*, 215 Ariz. 287, ¶ 7 (2007)).

**¶5**        After a defendant is convicted, but before sentencing, a court generally "may not release the defendant on bail or on the defendant's own recognizance" if "the defendant will, in all reasonable probability, receive a sentence of imprisonment."  Ariz. R. Crim. P. 7.2(c)(1)(A). [1]  Upon a determination of guilt, the court "must enter judgment and either pronounce sentence or set a date for sentencing."  Ariz. R. Crim. P. 26.2(b); *see also* Ariz. R. Crim. P. 26.3.  In contrast, after a verdict of guilty except insane, the court is instead required to "commit the defendant to a secure mental health facility."  Ariz. R. Crim. P. 25; *see also* A.R.S. § 13-3992(E).

**¶6**        In committing a defendant after a determination of guilty except insane, the court first determines the presumptive sentence the defendant could have received "if the defendant had not been found insane."  A.R.S. § 13-502(D).  That sentence is then suspended, and the defendant is "committed to a secure state mental health facility under the department of health services . . . for the length of that sentence."  *Id.*

**¶7**        Dominguez argues, and we agree, that commitment to a mental health facility is not a "sentence of imprisonment" under Rule 7.2(c)(1)(A).  First, "[a] finding of guilty-except-insane is not a criminal conviction."  *State v. Bomar*, 199 Ariz. 472, ¶ 8 (App. 2001).  The governing statutes instead allow for "the imposition of rehabilitative alternatives more humane than incarceration" intended to treat, not punish.  *Id.* ¶ 9.  We thus concluded in *Bomar* that a defendant committed under § 13-502 has not "been sentenced to a term of imprisonment" and is therefore not eligible for presentence incarceration credit.  *Id.* ¶ 8.  The analysis in *Bomar* applies with equal force here.  Because commitment to ASH is not a term of imprisonment, Rule 7.2(c)(1)(A) does not require the court to revoke a defendant's release when that defendant is found guilty except insane.

**¶8**        Second, a sentence of imprisonment is for a definite term, *see* A.R.S. §§ 13-701(A), 13-707(A), while commitment under § 13-502 is not, *see Bomar*, 199 Ariz. 472, ¶¶ 10-12.  As we explained in *Bomar*, the governing statute allows release from confinement "as soon as, but not before, [a] person is determined to be free from mental illness and no longer poses a

---

[1]There are two exceptions to this provision, neither of which applies here.  Ariz. R. Crim. P. 7.2(c)(1)(A)(i)-(ii).

danger to society." *Id.* ¶ 23; *see also* A.R.S. § 13-3994(B)(1)–(4).[2] Thus, confinement could exceed any potential prison term. This distinction reinforces our conclusion that commitment following a finding of guilty except insane is distinct from a sentence of imprisonment.

**¶9** We reject the state's argument that any "term of commitment" qualifies under Rule 7.2(c), irrespective of how it has been "semantically label[]ed." Adherence to the meaning of plain language is the cornerstone of statutory and rule interpretation—thus, our analysis must start with the language of the rule. *Brearcliffe*, ___ Ariz. ___, ¶ 22, 525 P.3d at 1091. That language here is unambiguous. If the supreme court had intended *any* type of pending commitment to require post-verdict custody, it would have said so.[3] Instead, it limited that requirement to when a defendant likely faces a sentence of imprisonment.

---

[2]Section 13-3994 has been revised since *Bomar* was decided. The main difference is that the current version states that a person who "no longer needs ongoing treatment for a mental disease or defect and is not dangerous" is placed on probation "for the remainder of the commitment term." § 13-3994(B)(2). The current version also states that, if the person no longer needs treatment but is dangerous and was subject to sentencing under A.R.S. §§ 13-704, 13-710, or 13-751(A), the person is transferred to the department of corrections to serve "the remainder of the commitment term." § 13-3994(B)(4). The version analyzed in *Bomar* instead provided only that a person would be released or would remain in custodial treatment. *See* 1999 Ariz. Sess. Laws, ch. 110, § 1. These differences do not affect our analysis.

[3]The state argued in superior court that the respondent judge could revoke Dominguez's release because he had pled guilty to a dangerous offense and thus potentially could be sent to prison if, after a future hearing, a court determined he "no longer need[ed] ongoing treatment for a mental disease or defect" but was nonetheless "dangerous." § 13-3994(B)(4). The state does not raise this argument on review, and the respondent did not conclude it was required to revoke Dominguez's release based on the possibility of future incarceration. It instead determined that Dominguez's confinement in a secure treatment facility constituted imprisonment. Accordingly, we express no opinion whether a superior court could reasonably determine a defendant would likely "receive a sentence of imprisonment" because the defendant could be incarcerated pursuant to § 13-3994(B) at some future date.

**¶10** The state also suggests that *Bomar* is not persuasive because it did not address Rule 7.2(c), specifically "the objectives and purposes" served by that rule. It argues that, because the rule is intended to ensure public safety, courts must have the authority to take into custody a defendant who is "factually guilty of the offense." The state neglects to explain, however, how its view of best practices for public safety would permit us to disregard the governing rule's plain language. And despite the state's contrary suggestion, nothing would prevent a superior court from exercising its authority to retain a defendant in custody if appropriate. *See generally* A.R.S. § 13-3961 (allowing court to hold defendant nonbondable under certain circumstances). In addition, a defendant's adjudication of guilty except insane could warrant reexamination of the release conditions under Rule 7.4(c).

**¶11** Because Rule 7.2(c)(1)(A) does not require a superior court to revoke the release of a defendant found guilty except insane, we accept special action jurisdiction and grant relief.