IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

J.V., *Petitioner,*

*v.*

THE HONORABLE MICHAEL BLAIR,
Judge of the SUPERIOR COURT OF THE STATE OF ARIZONA,
In and for the County of MARICOPA, Respondent/Judge,

BRADFORD MORRIS,
Real Party in Interest.

No. 1 CA-SA 23-0075
FILED 8-31-2023

Petition for Special Action from the Superior Court in Maricopa County
No. CR2022-144360-001
The Honorable Michael C. Blair, Judge

**ACCEPT JURISDICTION; DENY RELIEF**

COUNSEL

Legal Services for Crime Victims in Arizona, Sun City
By Jamie Balson
*Counsel for Petitioner*

Maricopa County Public Defender's Office, Phoenix
By Kassandra Garcia
*Counsel for Bradford Lee Morris, Real Party in Interest*

Maricopa County Attorney's Office, Phoenix
By Douglas Gerlach
*Counsel for State of Arizona, Real Party in Interest*

---

**OPINION**

Chief Judge David B. Gass delivered the opinion of the court, in which Judge Brian Y. Furuya joined, and Judge Andrew M. Jacobs specially concurred.

---

**G A S S**, Chief Judge:

¶1 J.V., a victim, seeks review of an order suspending prosecution for two years for criminal defendant Bradford Morris to complete a deferred prosecution program. J.V. asks this court to interpret an Arizona statute and a rule of criminal procedure to mean the superior court has discretion to reject a deferred prosecution agreement for a legally eligible defendant. J.V. contends a contrary reading violates her right to be heard under Arizona's Victims' Bill of Rights (VBOR). We accept jurisdiction but deny relief.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 Following a domestic violence event between J.V. and Morris, the State filed criminal charges against Morris. After investigating, the State offered to dismiss the charges against Morris if he agreed to participate in, and successfully complete, a deferred prosecution program called the Domestic Violence Excessive Response Diversion Program (deferred DV prosecution).

¶3 For a defendant to be legally eligible for deferred DV prosecution, three things must be true. First, the charges the defendant faces must arise under certain domestic violence offenses. Second, a defendant then must meet certain criteria, including not having been convicted of various charges. Third, the victim must have "a history of committing acts of domestic violence against [the defendant]. This history does not have to be contained in police reports but does need to be demonstrated by means other than mere self-reporting." Maricopa County Attorney's Office Prosecution Policies and Procedures, *Domestic Violence Excessive Response Diversion*, Procedure 17.8, rev. 1 (Sept. 29, 2021), https://www.maricopacountyattorney.org/437/Prosecution-Policies (select "Procedure 17.8") (Procedure 17.8).

¶4        Morris is legally eligible for deferred DV prosecution. Morris faces charges for a qualifying domestic violence offense. Before this case, Morris had no criminal history. The defense provided information showing eight documented instances of violence and abuse J.V. committed against Morris and his children, including court documents, photos, and videos. The defense also described "a lack of physical evidence supporting a conviction" and inconsistent witness statements.

¶5        At first, Morris refused to accept the State's deferred DV prosecution offer. The parties then participated in a settlement conference. During the settlement conference, Morris changed his mind and agreed to deferred DV prosecution. Though J.V. and her attorney did not participate in the settlement conference, they attended it. J.V. later moved, under the VBOR, to be heard on the deferred prosecution offer. The superior court granted the motion and held a hearing, during which J.V. read her victim's statement. The superior court then denied the State's motion to suspend prosecution.

¶6        The State moved to reconsider the denial of its motion to suspend prosecution, arguing the superior court lacked discretion to deny the motion for a legally eligible defendant. Following oral argument, the superior court "reluctantly" signed an order suspending prosecution after finding it was legally obligated to do so. At the same time, the superior court encouraged J.V. to request special action review. J.V.'s special action petition followed.

## SPECIAL ACTION JURISDICTION

¶7        Though "highly discretionary," special action jurisdiction may be appropriate when a party has no "equally plain, speedy, and adequate remedy by appeal." *Prosise v. Kottke*, 249 Ariz. 75, 77 ¶ 10 (App. 2020) (quoting Ariz. R.P. Spec. Act. 1(a)). "Jurisdiction is also appropriate 'in matters of statewide importance, issues of first impression, cases involving purely legal questions, or issues that are likely to arise again.'" *Id.* (quoting *State ex rel. Romley v. Martin*, 203 Ariz. 46, 47 ¶ 4 (App. 2002)).

¶8        The VBOR provides victims "standing . . . to bring a special action . . . seeking to enforce any right or to challenge an order denying any right guaranteed to victims." A.R.S. § 13-4437.A; Ariz. R.P. Spec. Act. 2(a)(2).

¶9        This case involves two issues of first impression: (1) whether the superior court may reject a deferred prosecution agreement for a legally eligible defendant and (2) whether restricting the superior court from doing

so violates a victim's right to be heard. No Arizona authority directly answers those questions. Because J.V. has no right to appeal and has no other plain, speedy, and adequate remedy, we exercise our discretion to accept jurisdiction.

**ANALYSIS**

**I.** **Allowing the superior court to reject a deferred prosecution agreement for a legally eligible defendant would violate the separation of powers clause of the Arizona Constitution.**

¶10 J.V. argues the superior court had the discretion to deny the State's motion to suspend the prosecution. In challenging the superior court's ruling to the contrary, J.V. argues this court can interpret Rule 38.1, Arizona Rules of Criminal Procedure, and A.R.S. § 11-365 to allow the superior court to reject a deferred prosecution agreement for a legally eligible defendant without violating the separation of powers clause. J.V.'s proposed interpretation runs contrary to the statute's plain language.

¶11 This court reviews questions of statutory interpretation *de novo. J.L.F. v. Ariz. Health Care Cost Containment Sys.*, 208 Ariz. 159, 161 ¶ 10 (App. 2004). A statute's plain language guides its interpretation. *See Ariz. Advoc. Network Found. v. State*, 250 Ariz. 109, 114 ¶ 19 (App. 2020). If the statute's plain language is unambiguous, this court "must give effect to that language without employing other rules of statutory construction." *Parsons v. Ariz. Dep't of Health Servs.*, 242 Ariz. 320, 323 ¶ 11 (App. 2017). This court also applies the principles of statutory construction to rules. *State v. Aguilar*, 209 Ariz. 40, 47 ¶ 23 (2004).

¶12 The legislature expressly granted the county attorney "sole discretion to decide whether to divert or defer prosecution of an offender." A.R.S. § 11-365. Exercising that discretion, the Maricopa County Attorney's Office developed the deferred DV prosecution and specified the legal eligibility requirements for that program. To implement the county attorney's statutory discretion, the Arizona Supreme Court adopted Rule 38.1, titled "Suspension of Prosecution for a Deferred Prosecution Program." Under Rule 38, the superior court, "[a]fter reviewing the motion and the defendant's signed consent, and upon finding the defendant legally eligible for a deferred prosecution program, . . . *must* suspend further proceedings for the period specified in the motion, not exceeding two years." Ariz. R. Crim. P. 38.1(c) (emphasis added).

¶13 The legislature's statutory grant of authority to the county attorney, as recognized by the Arizona Supreme Court's Rule 38.1, tracks

the "Distribution of Powers" directive in the Arizona Constitution. *See* Ariz. Const. art. 3. As applicable here, Arizona's "three separate departments, the legislative, the executive and the judicial . . . shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others." *Id.* Executive powers "shall be as prescribed by law." Ariz. Const. art. 5, § 9. The executive branch has broad discretion to decide whether to charge a defendant with a crime and, unless restricted by the legislature, whether and how to proceed. *State v. Larson*, 159 Ariz. 14, 16 (App. 1988) ("[Prosecutors have] broad discretion in the enforcement of criminal laws and in deciding what charges, if any, will be filed against a defendant. That function carries with it the discretion to proceed or not to proceed once an action has been commenced unless the legislature has restricted that authority.") (citations omitted). Read together, the plain language of Arizona's constitution, statutes, and rules reveals the executive branch has sole discretion whether to prosecute or defer prosecution. *See* Ariz. Const. art. 5, § 9; A.R.S. § 11-365; Ariz. R. Crim. P. 38.1.

¶14  Even so, J.V. suggests the superior court's ability to reject a deferred prosecution agreement lies within the "overlap among branches." *See State v. Montes*, 226 Ariz. 194, 196 ¶ 8 (2011). True, the separation-of-powers lines are not always bright, and some overlap exists, sometimes because one branch has ceded power to the other. *See Cook v. State*, 230 Ariz. 185, 187 ¶ 6 (App. 2012) (explaining the legislature "may allow another body to fill in the details of legislation already enacted"). With deferred prosecutions, the superior court has such overlapping power: the superior court serves as a check on the executive's power because the superior court must first "find[] the defendant legally eligible for a deferred prosecution program." Ariz. R. Crim. P. 38.1(c). But the superior court has no discretion to reject a deferred prosecution offer for a legally eligible defendant. *See id.* ("After reviewing the motion and the defendant's signed consent, and upon finding the defendant legally eligible for a deferred prosecution program, the court must suspend further proceedings . . . ."). To do so would violate the separation of powers clause because the judiciary would encroach upon the county attorney's "sole discretion to decide whether to divert or defer prosecution of an offender." A.R.S. § 11-365; *see* Ariz. Const. art. 3.

¶15  J.V. argues the superior court may reject a deferred prosecution offer because such offers are like plea agreements. *See* Ariz. R. Crim. P. 17.4(d). Morris counters, arguing the Arizona Supreme Court "formally distinguished diversion offers and plea agreements" in *State v. Gill*, 242 Ariz. 1, 3 ¶ 2 (2017). J.V. contends *Gill* only distinguished

discussions of plea agreement from discussions of deferred prosecution. We agree with Morris.

¶16    In *Gill*, the Arizona Supreme Court considered whether statements made during discussions about a deferred prosecution agreement were inadmissible under Arizona Rule of Evidence 410. 242 Ariz. at 3 ¶ 1. The *Gill* court said, "discussions about deferred prosecution are categorically different from plea discussions." *Id.* at 4 ¶ 12. But it arrived at that conclusion by distinguishing the agreements themselves: "[a] deferred prosecution agreement can result in a dismissal of all charges, whereas a guilty plea will not because the defendant formally admits committing a criminal offense." *Id.* at 4 ¶ 13 (citing *DeNaples v. Office of Comptroller of Currency*, 706 F.3d 481, 489 (D.C. Cir. 2013) ("A plea bargain, for instance, would not be a pretrial diversion, no matter its similarity to pretrial diversion for other purposes.")).

¶17    The difference between a plea bargain and a deferred prosecution agreement places them on opposite sides of the boundary between judicial review and executive prosecutorial discretion. The prosecution decides whether to offer deferred prosecution as part of its decision whether to prosecute—a power within its sole discretion. *See id.*; *Larson*, 159 Ariz. at 16. Similarly, the prosecution offers a plea agreement as part of the prosecution process. *See Gill*, 242 Ariz. at 4 ¶ 13.

¶18    J.V. contends the superior court's encroachment would be *de minimis*. To that end, J.V. argues the superior court "is not dictating the terms of the agreement or dictating how the prosecutor moves forward in the case." Instead, J.V. asserts the superior court "is merely exercising a limited power to determine, based upon all information properly before it, whether the motion to suspend prosecution comports with the interests of justice."

¶19    True enough, a court cannot "order the State to offer a plea agreement entirely of the court's concoction. Such a holding would surely violate separation of powers." *State v. Donald*, 198 Ariz. 406, 417 ¶40 (App. 2000. But when the State chooses to offer a plea agreement, the State subjects itself to the superior court's remedial authority. *Id.* But that remedial authority does not extend to deferred prosecution programs. Instead, through A.R.S. § 11-365 and Rule 38.1 the Legislature and Arizona Supreme Court, respectively, have indicated allowing a righteous motion to defer is in the interests of justice. *See* A.R.S. § 11-365; Rule 38.1(c).

¶20        Allowing the superior court to reject deferred prosecution agreements for legally eligible defendants would remove the county attorney's power to offer deferred prosecution, which the law expressly provides. *See* A.R.S. § 11-365. Instead, the county attorney would need to proceed immediately to trial, offer a plea, or dismiss the charges without providing any option for the defendant's remediation. At bottom, allowing the superior court to reject a deferred prosecution agreement for a legally eligible defendant would violate the separation of powers clause.

## II.    The State and the superior court complied with J.V.'s right to be heard under the VBOR.

¶21        J.V. argues this court cannot interpret Rule 38.1 and A.R.S. § 11-365 to prohibit the superior court from rejecting a deferred prosecution offer for a legally eligible defendant without violating J.V.'s constitutional right to be heard. J.V. contends a victim's opportunity to be heard "must be granted at a meaningful time and in a meaningful manner" and necessarily requires the superior court have discretion to reject a deferred prosecution agreement for a legally eligible defendant based on a victim's statement. J.V.'s argument falls short.

¶22        "To preserve and protect victims' rights to justice and due process, a victim of crime has a right . . . [t]o be heard at any proceeding involving a post-arrest release decision, a negotiated plea, and sentencing." Ariz. Const. art. 2, § 2.1(A)4; A.R.S. § 13-4422. Victims may "be present at and, upon request, . . . be informed of all criminal proceedings where the defendant has the right to be present." Ariz. Const. art. 2, § 2.1(A)3; A.R.S. § 13-4420.

¶23        Victims also have the right "[t]o confer with the prosecution, after the crime against the victim has been charged, before trial or before any disposition of the case and to be informed of the disposition." Ariz. Const. art. 2, § 2.1(A)6; A.R.S. § 13-4419. The right to confer with the prosecution allows victims to voice their views about pretrial deferred prosecution programs but "does not include the authority to direct the prosecution of the case." A.R.S. § 13-4419.A, .C.

¶24        J.V. does not argue that she was not afforded the right to confer with the prosecution about the disposition of this case. And J.V. attended the settlement conference when the State and Morris agreed on using a deferred DV prosecution approach to resolve Morris's case. On this record, J.V. has not shown a denial of her express rights under the VBOR. *See, e.g.*, Ariz. Const. art. 2, § 2.1(A)4, 9 (providing a right to be heard at

proceedings involving post-arrest release decisions, negotiated pleas, sentencing, and post-conviction release from confinement).

**¶25** The VBOR's corresponding statutes also specify proceedings during which victims have a right to be heard, which do not include proceedings on deferred prosecution programs. A.R.S. §§ 13-4414 (postconviction release from confinement), -4415 (probation modification, termination, or revocation disposition), -4421 (initial appearance of person suspected of criminal offense), -4422 (post-arrest custody decisions), -4426 (sentencing), -4427 (probation modification, revocation disposition, or termination proceedings), -4440 (notice of petition of factual innocence), -4441 (restoration of right to possess a firearm).

**¶26** Because the superior court did hear from J.V., this case does not present the issue of whether a victim has a specific right to be heard by the court on a deferred prosecution program. We thus proceed assuming, but without deciding, J.V. had a right to be heard and consider whether the superior court complied with that right.

**¶27** J.V. argues the right to be heard is "merely performative" if the superior court cannot "consider" a victim's input. But victims often have a right to be heard when the court has no discretion when deciding an issue. For example, victims have a right to be heard during sentencing even when a judge must impose a statutory mandatory sentence and the judge has no discretion to deviate from that mandatory sentencing. Ariz. Const. art. 2, § 2.1(A)4; A.R.S. § 13-4426.

**¶28** J.V.'s reliance on *State v. Wein*, 242 Ariz. 372 (App. 2017), is misplaced. *Wein* said "[a] victim's 'right to be heard' is meaningless if it is not tantamount to a right to have the victim's impact statement (including his/her safety concerns) be seriously considered and addressed before the determination of whether a defendant is bondable." 242 Ariz. at 375 ¶ 10. But in *Wein*, the superior court denied the victim the opportunity to address the court during a bond release hearing. *Id.* at 373 ¶ 1. In that context, this court recognized the victim had a right to be heard and directed "the superior court to hold a new hearing wherein it consider[ed] the victims' impact statements in undertaking the determination as to whether the [S]tate has proven [the defendant] is not bondable . . . ." *Id.* at 375 ¶ 12. *Wein* did not address what the VBOR requires in the context of this special action.

**¶29** Here, the superior court must determine whether the State has shown the defendant is legally eligible for a deferred prosecution program. Assuming J.V. had a right to be heard on the issue, the superior

court could consider J.V.'s statement in relation to whether the defendant was legally eligible. The superior court heard J.V.'s statement, still found the State showed Morris was legally eligible for deferred DV prosecution, and properly ordered suspended prosecution. J.V. had the chance to speak, and the superior court considered J.V.'s statement in the scope of its decision, thus following the standard set in *Wein*. J.V. cites, and this court identifies, no authority supporting J.V.'s contention a victim's "meaningful right to be heard" allows the superior court to expand its discretion beyond the scope afforded to it under Arizona's constitution, statutes, or rules.

## CONCLUSION

¶30            Because the superior court did not err, we accept jurisdiction but deny relief.

**Jacobs**, J., specially concurring:

¶31            J.V.'s petition proposes a sweeping change to Arizona law in which a victim of crime could control or direct a criminal prosecution.  J.V. argues that: (1) A.R.S. § 11-365 can be construed to permit the superior court to reject deferred prosecution agreements; and (2) Arizona Rule of Criminal Procedure 38.1 (and by implication, A.R.S. § 11-365) are unconstitutional because they contradict the Victims' Bill of Rights (VBOR) by denying the superior court the power to reject deferred prosecution agreements.  While I agree with the opinion that we must affirm, I write separately to state different reasons why both of the petition's arguments are incorrect, grounded in:  (1) the plain language of A.R.S. § 11-365; (2) the substance A.R.S. § 13-4419 supplies to the VBOR; (3) the inconsistency of J.V.'s positions with *Fay v. Fox*, 251 Ariz. 537 (2021); and (4) the Arizona Supreme Court's considered enactment of Rule 38.1.

¶32            First, with respect to J.V.'s threshold question to this court— "whether A.R.S. § 11-365 divests the trial court of authority to reject a deferred prosecution agreement"—there is little statutory interpretation to conduct.  The command of A.R.S. § 11-365 is crystal clear.  The Legislature gave county attorneys the "sole discretion to decide whether to divert or defer prosecution of an offender."  A.R.S. § 11-365.  This statute means what it says.  *See generally Ariz. Advoc. Network Found. v. State*, 250 Ariz. 109, 114

¶ 19 (App. 2020) (explaining that we must apply unambiguous statutory language without using other tools of statutory construction); *Parsons v. Ariz. Dep't of Health Servs.*, 242 Ariz. 320, 323 ¶ 11 (App. 2017) (similar). While it is true that, where possible, we construe statutes so that they are constitutional, that discretion does not allow us to drop a stray "not" into an unambiguous statute to "save" it. *See Garcia v. Butler in & for Cnty. of Pima*, 251 Ariz. 191, 195–96 ¶ 18 (2021) ("[W]hen the relevant text allows, we construe statutes to comply with constitutional requirements."); *Glazer v. State*, 237 Ariz. 160, 163 ¶ 12 (2015) ("If the statute is subject to only one reasonable interpretation, we apply it without further analysis."); *State v. Gomez*, 212 Ariz. 55, 57 ¶ 11 (2006) ("When the language is clear and unambiguous, and thus subject to only one reasonable meaning, we . . . apply[] the language without using other means of statutory construction." (internal quotation marks and citation omitted)). We thus are not at liberty to turn "sole discretion" in A.R.S. § 11-365 into a standard amounting to "discretion the county attorney shares with the trial court," as J.V. urges. The statute's language answers squarely and disposes fully of one of the two questions the petition presents—A.R.S. § 11-365 unambiguously divests the trial court of authority to reject a deferred prosecution agreement. Because it does, we need not reach the question resolved by Paragraphs 10 through 20 of the opinion—whether rewriting A.R.S. § 11-365 as J.V. requests would violate the Arizona Constitution.

**¶33**        Second, J.V.'s other argument—that Rule 38.1 and A.R.S. § 11-365 run afoul of the VBOR by preventing trial courts from rejecting deferred prosecution agreements—likewise fails because the VBOR indirectly authorizes the very reservation of power to county attorneys those provisions represent. Section 2.1(D) of the VBOR grants "[t]he legislature . . . the authority to enact substantive and procedural laws to define . . . the rights guaranteed to victims by this section . . . ." Ariz. Const. art. 2, § 2.1(D). Most constitutional provisions do not contain express language giving a legislature the power to flesh them out. The VBOR does, however, which makes it analogous to Section 5 of the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. amend. XIV, § 5 ("The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article."). When Congress enacts remedial legislation pursuant to its Section 5 power, the Supreme Court properly accords that legislation "much deference." *City of Boerne v. P.F. Flores*, 521 U.S. 507, 536 (1997) ("It is for Congress in the first instance to 'determin[e] whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment,' and its conclusions are entitled to much deference."(alteration in original) (quoting *Katzenbach v. Morgan*, 384 U.S. 641, 651 (1966))).

¶34     We have even more reason to defer to our Legislature's elaborations of the VBOR than the U.S. Supreme Court has to defer to Congress under Section 5 of the Fourteenth Amendment. After all, Section 5 grants Congress a power "to enforce, by appropriate legislation," the Fourteenth Amendment, which begs the question of what legislation is appropriately remedial, as the Supreme Court explained in *Boerne*. But the VBOR *directly delegated* to the Legislature the power to "define . . . the rights guaranteed to victims." Ariz. Const. art. 2, § 2.1(D). So when our Legislature enacted A.R.S. § 13-4419(C) in 1991, just after the people made the Victims' Bill of Rights part of the Arizona Constitution, and provided that "[t]he right of the victim to confer with the prosecuting attorney does not include the authority to direct the prosecution of the case," that is an elaboration of the VBOR *authorized and endorsed by the Victims' Bill of Rights itself*. For this reason, A.R.S. § 11-365 is constitutional. It simply does what A.R.S. § 13-4419(C) says it can—preserve the prosecutor's power over whether to prosecute, without conferring on victims such as J.V. "the authority to direct prosecution of the case." *See* A.R.S. § 11-365. Rule 38.1 does the same thing and is thus constitutional for the same reason.

¶35     Third, the Arizona Supreme Court's construction of the VBOR in *Fay* likewise supports this outcome. Our supreme court began its analysis in *Fay* by quoting Section 2.1(D) of the Victims' Bill of Rights, which sets out the Legislature's constitutional role in defining its protections. 251 Ariz. at 540 ¶ 14. This underscores that we must construe the Victim's Bill of Rights consistent with A.R.S. § 13-4419(C).

¶36     The Arizona Supreme Court's resolution of the specific issue in *Fay* also reinforces why we must affirm. There, the Court allowed a victim, after a $562,980.45 restitution order in her favor arising from the murder of her son, to object to a request by her son's murderer to take a delayed appeal from the restitution order. *Fay*, 251 Ariz. at 538-39, 542 ¶¶ 3, 7-8, 31. The Court reasoned that if the offender could "proceed with a delayed appeal of the restitution order [that] w[ould] directly impact [the victim's] rights to due process, prompt restitution, and finality." *Id.* at 541 ¶ 23. The Court thus rejected the dissent's suggestion that because the VBOR and the Victims' Rights Implementation Act both omitted to expressly "authorize [victims] to object to [an offender's] request for a delayed appeal of [a] criminal restitution order," *id.* at 542-43 ¶ 33, victims lacked that right. *Id.* at 540-41 ¶¶ 18-20 (rejecting limitation of proceedings in which victims may be heard to those expressly enumerated in VBOR or enabling legislation); *cf. id.* at 542-43 ¶ 33 (Timmer, V.C.J., dissenting) (stating that victim does not have a right to be heard in hearings on an offender's delayed appeal because delayed appeals are not proceedings in

11

which the VBOR or its enabling legislation expressly authorize victims to be heard).

¶37       The Court also clarified the bounds of victims' rights, reaffirming that while victims must be heard in a variety of proceedings already initiated, they are not parties entitled to initiate proceedings. *Fay*, 251 Ariz. at 542 ¶ 27 ("[w]hile it is true that a major purpose of the VBR is to give victims the right to be heard at 'criminal proceedings,' we cannot conclude that victims are 'parties' with the right to file their own petitions for review." (quoting *State v. Lamberton*, 183 Ariz. 47, 51 (1995))). In short, co-participation is the design of the VBOR—but not victim control and initiation of proceedings. Distinguishing *Lamberton*, the Court in *Fay* emphasized that the victim "[wa]s not seeking to initiate anything but merely to be heard on a matter, initiated by [the offender], that directly affects her constitutional rights." *Fay*, 251 Ariz. at 542 ¶ 27.

¶38       Precisely the opposite is the case here. J.V. is attempting in substance to compel a prosecution where the county attorney has resolved not to pursue one, subject to Morris' completion of the diversion program. While in *Fay*, the victim sought to participate in a proceeding the offender already began, 251 Ariz. at 539 ¶¶8-9, here J.V. wants to force the State to conduct a proceeding it seeks to avoid conducting under A.R.S. § 11-365. Finally, in *Fay*, no provision of law affirmatively barred the victim's objection to a late appeal of a restitution award, but here, A.R.S. § 13-4419(C), a provision of the Victims' Rights Implementation Act, A.R.S. §§ 13-4401 to -4443, bars precisely what J.V. requests. *Fay* thus instructs us that J.V. impermissibly seeks to exercise what amounts to the prerogatives of a party, and reaches further than the VBOR allows. *See* 251 Ariz. at 542 ¶ 27.

¶39       Fourth, J.V.'s argument that Rule 38.1 and A.R.S. § 11-365 are unconstitutional fails to persuade because we owe some deference to the Arizona Supreme Court's considered promulgation of Rule 38.1. The Arizona Supreme Court is vested with the authority to enact procedural rules like Rule 38.1. Ariz. Const. art. 6, § 5(5) ("The supreme court shall have . . . [p]ower to make rules relative to all procedural matters in any court.")

¶40       The record suggests the Arizona Supreme Court considered the appropriateness of the very feature of Rule 38.1 J.V. challenges when it promulgated that rule. In 2013, the Arizona Supreme Court's own staff counsel petitioned that Court to modify Rule 38.1 to remove references in Rule 38.1 to the superior court, so the rule would function with equal ease in both the superior court and the justice court. *See* Arizona Rule Petition

No. R-12-0016, https://www.azcourts.gov/Rules-Forum/aft/348.   The
Maricopa County Attorney then filed a Comment on that Petition, and in
his Comment suggested the Arizona Supreme Court adopt that proposal,
critically modified to eliminate the language implying that the superior
court retained discretion to reject deferred prosecution agreements.
Arizona Rule Petition No. R-12-0016, May 18, 2012 Comment, at 2,
https://www.azcourts.gov/Rules-Forum/aft/348 (last visited July 24,
2023).  The Comment pointed the Court to the very aspect of Rule 38.1 now
at issue:

> To further facilitate the deferred prosecution process, we also
> recommend that the language of Rule 38.1(c) be modified to
> be consistent with Arizona law.  Currently, the rule provides
> that after the prosecutor files a motion to suspend prosecution
> for a deferred prosecution program, "the court may order that
> further proceedings be suspended for two years."   The
> wording of this rule could be interpreted to mean that the
> court has discretion to decide whether or not to allow
> diversion in a particular case.

*Id.*

**¶41**        The Maricopa County Attorney Comment then pointed the
Arizona Supreme Court to A.R.S. § 11-365 and, citing case law, asked the
Arizona Supreme Court to modify Rule 38.1 to exclude from possibility the
very discretion J.V. seeks to vest in the superior court:

> To the extent that such an interpretation is possible [that the
> superior court has the power to disapprove a deferred
> prosecution agreement], it is inconsistent with Arizona law.
> A.R.S. § 11-365 clearly provides that "[t]he county attorney
> has sole discretion to decide whether to divert or defer
> prosecution of an offender."  *See also Cranmer v. State*, 204
> Ariz. 299, 63 P.3d 1036 (App. 2003) (noting that the county
> attorney's sole discretion to resume prosecution stems from
> the county attorney's sole discretion to divert or defer
> offenders).

*Id.*

**¶42**        The Arizona Supreme Court then adopted the Petition of its
staff counsel, as modified by the friendly amendment of the Maricopa
County Attorney, bringing Rule 38.1 into congruence with A.R.S. § 11-365.
Ariz.    Sup.    Ct.    Order    R-12-0016    (Aug.    30,    2012),

https://www.azcourts.gov/Portals/20/2012Rules/R120016B.pdf.    While
enacting Rule 38.1 did not foreclose later constitutional challenges to it, and
there is no reasoned decision explaining the Court's thoughts in adopting
it, we as an intermediate court of appeals owe deference to the Court's
determinations, both express and implied.  At minimum, we can infer that
the Court did not appreciate any constitutional infirmity at the time it
adopted Rule 38.1.  Given the three sound reasons already advanced that
A.R.S. § 11-365 and thus Rule 38.1 are constitutional, the Court's considered
adoption of Rule 38.1 with stakeholders citing authority to it tend to
confirm the Court's apparent belief in the provision's constitutionality.

**¶43**          For all of these reasons, I concur in the result the majority
opinion reaches.



AMY M. WOOD • Clerk of the Court
FILED:    AA