[Civil No. 2722.   Filed November 21, 1928.]

[271 Pac. 867.]

C. C. TILLOTSON, and GEORGE W. P. HUNT, J. C. CALLAGHAN and C. M. ZANDER, Acting as the Board of Directors of State Institutions of the State of Arizona, Appellants, v. ANA FROHMILLER, Auditor of the State of Arizona, (Defendant), and J. C. CALLAGHAN, Treasurer of the State of Arizona (Intervener), Appellees.

396

Mr. Thomas P. Walton and Mr. Herbert B. Shoemaker, for Appellants.

Messrs. Mathews & Bilby, for Intervener-Appellee.

ROSS, C. J.—The plaintiff Tillotson filed his complaint seeking a writ of *mandamus* directing the state auditor, Ana Frohmiller, to audit and allow a claim of his against the state for services rendered as an engineer, under the direction of the Board of Directors of State Institutions, the board assuming the right to incur such indebtedness under and by virtue of an initiative measure and a resolution passed by said board, both of which are hereafter set out. Thereafter the members of the Board of Directors of State Institutions, to wit, George W. P. Hunt, Governor, J. C. Callaghan, treasurer, and C. M. Zander, citizen member, asked and were granted the privilege of joining as plaintiffs.

The state treasurer, J. C. Callaghan, intervened, and he and the auditor filed separate answers, but raised practically the same questions. These answers consisted of general demurrers and averments that the initiative measure and the resolution under which the indebtedness was incurred were void, as in conflict with the state Constitution. The general demurrer was sustained, and, plaintiffs standing upon

their complaint, an order of dismissal was entered. The plaintiffs appeal, and we shall refer to the parties herein as plaintiffs and defendants.

The only question involved is as to whether the Board of Directors of State Institutions (successor to the Board of Control) had the authority to incur the indebtedness sued for, and that brings up the question of the validity or constitutionality of the initiative measure and the resolution under which the board acted in employing plaintiff Tillotson. The initiative measure in question was approved by the voters of the state at the November 3, 1914, election, and proclaimed a law by the Governor on December 14, 1914, and is published under the head of "Amendments" at page 19 in the back of the Laws of 1915, Regular, First and Second Special Sessions. As passed it reads:

"An act to promote the welfare of the people of the state of Arizona, and to provide for the development of the resources of the state, and to abolish the contract system of all state construction, and to establish a state printing plant, and to establish a state banking system, and to make appropriation therefor.

"Be it enacted by the people of the state of Arizona:

"Section 1. Whenever, in the judgment of the Board of Control it shall be for the best interest of the state to establish, maintain or operate any manufacturing establishment or institution, for the purpose of manufacturing, marketing or distributing any natural product existing, or to exist, in or upon any public lands of this state, said Board of Control is hereby authorized to erect, construct, maintenance [maintain] or operate such establishment.

"Sec. 2. The Board of Control is further authorized and empowered to construct, establish and maintain buildings, dams, reservoirs, flumes, water plants, gas plants, printing plants and all other plants necessary for the operation and development of the resources of this state.

"Sec. 3. Whenever, in the judgment of the Board of Control, it shall be for the best interest of the state, said board is hereby authorized and empowered to establish, operate, conduct and maintain a state banking system for the use and benefit of the people of the state, in conformity with the National Banking Act, and to establish, operate and maintain a state printing plant, to print school books and to do all state printing.

"Sec. 4. All work on all state buildings, dams, reservoirs, flumes, water plants, gas plants, and all other state construction, shall be done by day's pay, by the state, and the system of letting contracts by the state is hereby abolished.

"Sec. 5. There is hereby appropriated out of the general fund of the state treasury a sufficient amount to carry out and put into effect the provisions of this act. Should the general fund be impoverished, then the people may vote state bonds to carry out the provisions of this act."

On a referendum submitted by the legislature to the people, the latter, at the November, 1918, election, amended section 4 of said initiative measure to read as follows:

"All work on all state buildings, dams, reservoirs, flumes, water plants, gas plants and all other state construction may be done by contract." Appendix to Session Laws of Arizona 1919, p. 10.

We do not deem it necessary to give here the full text of the board's resolution. It was dated August 8th, 1927, and in its preamble recites that the $100,000 appropriated by the 1927 legislature "for the use of the Colorado River Commission for the purpose of making engineering surveys and for other very important purposes . . . is entirely inadequate." The body of the resolution recites that the "engineering work should be undertaken immediately," in order that data in fighting the Swing-Johnson Bill pending in Congress might be collected and made available to the opponents of such bill. We quote only that por-

tion of the resolution directing the tax levy and setting out the purpose of its proposed use:

"Therefore, be it resolved that the State Board of Equalization be requested to include in their levy for the current year the sum of $75,000.00; and

"Be it further resolved that the same be expended for the investigation of the storage, the development of power and the diversion of water for irrigation from points at or near Glen-Canyon and Bridge-Canyon, and for the filing for rights of way for canal lines with the state and federal departments and for the determination of the irrigable lands available under the most feasible project found by the engineers."

It is averred that after, and on the same day, the resolution was passed, the State Board of Equalization levied a tax on the taxable property of the state at a rate sufficient to cover the said sum of $75,000, to be used for the purposes mentioned in the initiative measure and resolution. It is alleged the services sued for by plaintiff Tillotson were rendered the Board of Directors of State Institutions on August 12th, 1927, and "consisted of estimating the cost of a survey of the Marble Gorge dam and reservoir, dam and tunnels to the Verde river in Arizona, including skeleton map of such survey." The complaint sets out the reasons the state auditor gave for not approving and allowing claim, as follows:

"(1) That the said claim does not constitute a proper and legal claim against the state of Arizona.

"(2) For the reason that in the opinion of said auditor there has not been nor is there now any appropriation made by law to pay said claim, neither are there any funds available for the payment of said claim."

Plaintiffs contend that the initiative measure is valid; that the Board of Directors of State Institutions acted within its jurisdiction and power in ordering the State Board of Equalization to make a levy

to cover the $75,000 proposed to be expended; that such board had the power to spend such money for the purposes indicated in its resolution, and to that end to employ and to pay plaintiff Tillotson for his services out of such fund.

The defendants state auditor and state treasurer contend, first, that the initiative measure is an attempt by the legislature to delegate its duties and powers to the Board of Directors of State Institutions, in violation of article 3 of the state Constitution, distributing the powers of government and prohibiting, except as otherwise provided, one department from exercising the powers of either of the others. The initiative measure is challenged on several other grounds, as that it violates section 20, part 2, article 4, of the Constitution, which provides that all appropriations, except the general appropriation bill, "shall be made by separate bills, each embracing but one subject"; also section 13 of said article, which provides that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." It is said the initiative measure contains many subjects unrelated to each other, and that some of them are not expressed in the title. Then objection is made that the resolution passed by the board is an attempt to make an appropriation for a purpose rejected by the voters in 1924, when they voted down an initiative measure proposing an appropriation of $100,000 for the same object. Finally, it is said, even if the initiative measure be upheld as constitutional, the attempt of the Board of Directors of State Institutions to replenish the "impoverished" general fund by a tax levy violated the provisions of such initiative measure.

We state these various contentions, as they were grounds upon which the defendant auditor refused to approve plaintiff's claim. While a bare statement of these contentions points strongly to their invalidity,

we will not discuss any of them, except the first, since, in our view of the law, the initiative measure, relied upon by the plaintiff as giving authority to the Board of Directors of State Institutions to do what was undertaken, is clearly a violation of article 3 of the state Constitution, reading as follows:

"The powers of the government of the state of Arizona shall be divided into three separate departments, the legislative, the executive, and the judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."

The powers and the duties of the respective departments of government are, in a general way, well understood. The notion, we believe, is prevalent among all the people in this country that the making of laws pertains to the legislature, or legislative department, their interpretation to the courts, and their execution to the executive department. And it is also well understood that, when one of the departments undertakes to exercise the powers and duties of either of the others, or seeks to delegate to it, or others, its duties and functions, the principle of the division of powers and responsibilities, the distinguishing feature of government in this country, is violated.

Section 1, part 1, article 4, of the Constitution, provides that the legislative authority of the state shall be vested in a legislature, but that the people reserve to themselves initiative and referendum powers as therein defined. These reservations to the people do not in any way affect the division of powers; they remain the same. The people cannot by an initiated law, any more than the legislature can by an act passed by it, delegate their powers to make laws to an agent or executive or administrative body. Acting in their capacity as lawmakers, the people are bound by the Constitution, the same as

the legislature. This is implied, if not asserted, by every provision of the Constitution defining the powers of the legislative department. Art. 4, Const. The initiative measure here involved has no more sanctity than if it had been passed by the legislature. Its validity must be tested by the same constitutional rules as an act of the legislature. The distinction made by plaintiff that the people as the source of all power may by an initiated law delegate their powers as lawmakers to an agent, whereas the legislature, because it is exercising a delegated or conferred power, may not do so, has not, under the Constitution, differentiated the legislation enacted by them. That legislation by the people should have the same force and effect as laws passed by the legislature, and be tested as to their validity by the same rules, is made evident by section 14, article 22, of that instrument, reading as follows:

"Any law which may be enacted by the Legislature under this Constitution may be enacted by the people under the initiative. Any law which may not be enacted by the Legislature under this Constitution shall not be enacted by the people."

Whether all the subjects mentioned in the initiated measure are comprehended within the terms of section 34, article 2, of the Constitution, authorizing the state and municipal corporations within the state "to engage in industrial pursuits," is beside the question. Under this enabling provision, the state and its municipalities doubtless can, when properly and legally thereunto authorized, engage in industrial pursuits; but when and under what circumstances they may do so must be determined by the legislative department, which must also supply the funds to be expended for that purpose.

We are not questioning the propriety of the state's engaging in the manufacturing, marketing and dis-

tributing of the natural products grown on its public lands, nor in its constructing, establishing and maintaining buildings, dams, reservoirs, flumes, water plants, gas plants, printing plants, a state banking system, a state printing plant, to print school books and to do all state printing, nor to construct all other plants necessary to the operation and development of the resources of the state, as provided in the initiative measure, sections 1, 2 and 3, nor are we required to determine whether all these are "industrial pursuits," within the meaning of section 34, article 2, of the Constitution. We simply confine ourselves to determining whether what was attempted was done in accordance with the terms and requirements of the Constitution.

A legislative act must be complete in itself, so that those charged with its administration are amenable to the courts for failure to put it into effect, or for its maladministration. Or as otherwise more succinctly stated by Mr. Justice HOLMES, in *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347, 16 Ann. Cas. 1047, 53 L. Ed. 826, 29 Sup. Ct. Rep. 511:

"Law is a statement of the circumstances in which the public force will be brought to bear upon men through the courts."

An examination of the initiative measure, in connection with this definition, clearly shows that it is incomplete. The discretion of the board as to whether it will engage in any of the enterprises mentioned is absolute, and not subject to control by the courts, nor any other power. They may or may not act, as they choose, and, when they do act, it is upon their independent uncontrolled judgment. It is well stated in 6 R. C. L. 165, section 166:

"One of the most important tests as to whether particular laws amount to an invalid delegation of legislative power is found in the completeness of the

statute as it appears when it leaves the hands of the Legislature. The generally recognized principle is that a law must be so complete in all its terms and provisions, when it leaves the legislative branch of the government, that nothing is left to the judgment of the electors, or other appointee or delegate of the Legislature.''

The measure is incomplete and incapable of administration without additions of a legislative character by the Board of Directors of State Institutions. This is admitted by the learned counsel for the plaintiff. But, as indicated heretofore, they contend that the people, as the source of all power, through the initiation and approval of the law, could and did confer or delegate power on the board to make such legislative additions.

This contention, as we have seen, is not tenable. The additions necessary to make the measure complete go to the very heart of the matter. It is one of the fundamental principles of our government that no one may expend the public funds without legislative authority. That department holds the purse strings of the state, and even it is subject to the constitutional restrictions. ''Under our system of government, all power to appropriate money for public purposes or to incur any indebtedness therefor, unless given by the Constitution to some other body politic, or individual, rests in the Legislature.'' *Le Febvre* v. *Callaghan,* 33 Ariz. 197, 263 Pac. 589.

Section 3 of article 9 of the Constitution provides that:

''No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the tax, to which object only it shall be applied.''

The initiative measure does not state nor select the object to be promoted or carried out. It leaves it to the Board of Directors of State Institutions to de-

termine whether it will establish a banking system, or a printing plant, or construct a dam, etc., as also the placing thereof, and its cost. These are all clearly and palpably legislative functions, and cannot be delegated. When an improvement, internal or industrial, is proposed, it is for the legislature to state what it shall be, and provide the funds to carry it out. This is necessary, under the above provision of the Constitution, in order that the ''object'' for which taxes are levied may be known to the taxpayer.

Under similar provisions it is said:

'' . . . The failure of the act to specify the purpose for which the tax is levied is fatal.'' *Meyer* v. *Lynde-Bowman-Darby Co.*, 35 Okl. 480, 130 Pac. 548.

It is also held, and we think correctly, that such provision of the Constitution is mandatory.

It is also apparent that any appropriation to carry out the object for which the tax is levied must be limited to the amount levied for that object. The appropriation placed by the initiative measure at the disposal of the Board of Directors of State Institutions is ''a sufficient amount to carry out and put into effect the provisions of this act.'' The most moderate attempt ''to carry out and put into effect'' all the commercial and industrial enterprises mentioned in the act would entail the expenditure of millions of dollars. The appropriation is unlimited in amount and unrestricted in its application to particular objects. At the pleasure of the board, it could be used for any one or all of the enterprises named in the act.

In *State* v. *Budge,* 14 N. D. 532, 105 N. W. 724, it appears the legislature passed an act providing for the remodeling and reconstruction of the capitol building and the erection of a Governor's residence, and placed the duty of carrying out the work upon three persons, appointed by the Governor and known as the capitol commissioners. The amount appro-

priated for both purposes was $600,000, but what portion should be used in remodeling and reconstructing the capitol and what amount in building the Governor's residence was not named. The court said:

"The commission has absolute power under this law to fix the limits of the cost of each of said buildings. They finally determine what sums shall be used for each building. We think that such discretion should have been exercised by the Legislature. It is not properly an administrative discretion. What the several buildings shall cost should have been limited by the act, as it is a substantive matter of legislative discretion that the Legislature cannot delegate. . . . How much of these funds should be used for each of these buildings pertains to the manner of the disposition thereof. The discretion and judgment to be used in these matters of relative amounts are committed to the Legislature by Congress. They are purely and clearly legislative powers, and cannot properly be delegated to persons or boards."

In *State ex rel. Davis* v. *Eggers,* 29 Nev. 469, 16 L. R. A. (N. S.) 630, 91 Pac. 819, the court had the following to say about an unlimited appropriation to pay the expenses of a state officer:

"As all appropriations must be within the legislative will, it is essential to have the amount of the appropriation, or the maximum sum from which the expenses could be paid, stated. This legislative power cannot be delegated nor left to the recipient to command from the state treasury sums to any unlimited amount for which he might file claims. True, the exact amount of these expenses cannot be ascertained nor fixed by the Legislature when they have not yet been incurred; but it is usual and necessary to fix a maximum, either in the general appropriation bill or in the act authorizing them, specifying the amount above which they cannot be allowed."

Other cases announcing the same principle are *Blaine County Inv. Co.* v. *Gallet,* 35 Idaho 102, 204

Pac. 1066; *Peabody* v. *Russell,* 302 Ill. 111, 20 A. L. R. 972, 134 N. E. 150.

The books are full of cases following the rule laid down by Judge COOLEY in his admirable work on Constitutional Limitations, 8th ed., page 224:

''One of the settled maxims in constitutional law is that the power conferred upon the Legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the state has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the Constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust.''

The initiative measure is such a flagrant violation of the rule against the delegation of the legislative power that we do not deem it necessary to do more than advert to certain exceptions to the general rule permitting to executive or administrative bodies the power to promulgate rules and regulations supplementing legislation for its complete operation and enforcement. 6 R. C. L. 177, §§ 178, 179.

The view we take is that the initiative measure is an incomplete law, and can only be made complete and operative by additions thereto by the Board of Directors of State Institutions; that such additions are purely legislative in character, and, because of constitutional prohibitions, cannot be delegated to such board.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.