252 P.2d 87

STATE v. MARANA PLANTATIONS, Inc.

No. 1033.

Supreme Court of Arizona.

Jan. 15, 1953.

Fred O. Wilson, Atty. Gen., and Robert Morrison, County Attorney of Pima County, Tucson, for appellant.

Darnell, Robertson & Holesapple, of Tucson, for appellee.

WINDES, Justice.

The State, by and through the county attorney of Pima County, filed a direct in-

formation consisting of six counts charging the Marana Plantations, Inc., with violating certain regulations adopted by the State Board of Health pursuant to the provision of Chapter 105, Session Laws 1941. The trial court dismissed the action for the reason that the statute enabling the board to pass the regulation is unconstitutional in that it delegated legislative power to an administrative board and for the further reason that the regulations were unconstitutional in that they were discriminatory and were of a local or special nature.

The source of the board's power to pass the questioned regulations, if any, is to be found in the following provision of Section 6, Chapter 105, 1941 Session Laws of Arizona:

"Sec. 6. Rules and regulations. (a) The board shall have power to adopt, promulgate, repeal, and amend rules and regulations consistent with law to: 1. define and control communicable diseases; 2. prevent and control public health nuisances; 3. regulate sanitation and sanitary practices in the interests of public health; 4. cooperate with local boards of health and health officers; 5. protect and promote the public health and prevent disability and mortality; 6. isolate any person affected with and prevent the spread of any contagious or infectious disease; 7. govern the transportation of dead bodies; 8. establish quarantine; and, 9. carry out the purposes of this Act."

The regulations involved are by their terms made applicable only to agricultural labor camps, and the information charges the violation of regulations Nos. 101 to 106 inclusive which read as follows:

"*Regulation 101—Water Supply:* Every labor camp shall be provided with a water supply from a source approved by the State Director of Health or the local health department having jurisdiction.

"The water supply shall be of sufficient quantity to provide a minimum of $3^{r}$ gallons per person per day to the camp site at a rate of two and a half times the average hourly demand, and be of a safe sanitary quality, meeting the standards of the State Department of Health.

"No cross- or back-flow connections with unapproved water supplies or other possible sources of contamination shall be permitted.

"*Regulation 103—Toilets:* Every camp shall be provided with suitable toilets with disposal systems meeting the requirements of the State Department of Health contained in regulations 30 through 32 inclusive, or if privies are used they shall meet the requirements of regulation 33 of the sanitary code. One toilet or one privy shall be provided for every 15 persons

or fraction thereof in the camp population. Privies shall be located at least 125 feet from any domestic source of water and shall at all times be maintained in good repair and in a clean, fly-tight, and sanitary condition. No living unit shall be more than 200 feet from toilet facilities.

"*Regulation 103—Bathing:* Every camp shall be provided with an adequate supply of hot and cold or tempered running water and all other necessary facilities for washing the hands, faces and bodies of the camp occupants. One shower head for each 20 persons or fraction thereof shall be provided.

"*Regulation 104—Housing:* The following minimum housing shall be provided:

"Family unit living quarters shall provide at least 60 square feet per occupant. When single or unattached workers are housed, 40 square feet of floor space shall be provided for each occupant.

"The window area shall be least $\frac{1}{8}$ of the floor space and all openings shall be effectively screened. Water under pressure shall be available within 50 feet of each living unit. Dirt floors shall not be permitted.

"After July 1, 1953, tent houses shall not be permitted. When heating is provided for any camp housing such heating units shall be properly vented to the outside atmosphere as directed by the local health authority. Adequate ventilation shall be provided.

"The State Director of Health shall have the authority to waive parts of this regulation where health conditions are not impaired.

"*Regulation 105—Fire Protection:* Every camp shall be equipped with fire fighting equipment such as fire hydrants and hose, water barrels and buckets, sand barrels, chemical extinguishers and shovels. The camp owner shall provide whichever equipment is most feasible. If water barrels are provided, larviciding will be necessary to prevent mosquito breeding.

"*Regulation 106—Garbage:* A sufficient number of water-tight metal garbage containers with tight-fitting lids shall be provided. These containers shall be emptied and cleaned at least twice weekly by a collection service provided by the owner of the camp. Garbage shall be disposed of by the sanitary land fill method or other method approved by local health authority at a site approved by the local health authority. Fly breeding prevention methods shall be practiced at all times."

 Under the Constitution the legislative authority of the state is vested in the legislature with the reservation that the

114

people at the polls may enact or reject laws. It is fundamental that the legislative power thus entrusted cannot be relinquished nor delegated. Tillotson v. Frohmiller, 34 Ariz. 394, 271 P. 867; Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854; Loftus v. Russell, 69 Ariz. 245, 212 P.2d 91. The line of demarcation between what is a legitimate granting of power for administrative regulation and an illegitimate delegation of legislative power is often quite dim. A clear guide for all situations is indeed difficult. The Board of Health as an administrative board can only do what its name imports, that is to say, it can only administer existing laws created by legislative authority. The difficulty is to properly mark the boundary between administrative and legislative power. It may safely be said that a statute which gives unlimited regulatory power to a commission, board or agency with no prescribed restraints nor criterion nor guide to its action offends the Constitution as a delegation of legislative power. The board must be corralled in some reasonable degree and must not be permitted to range at large and determine for itself the conditions under which a law should exist and pass the law it thinks appropriate. To use the apt phraseology of the late Justice Cardozo in Schechter Poultry Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 852, 79 L.Ed. 1570, an administrative board cannot be "a roving commission to inquire into evils and upon discovery correct them" and it must be "canalized within banks that keep it from overflowing." It cannot be "unconfined and vagrant".

It has been recognized that the legislature sometimes cannot practically nor feasibly prescribe all administrative details, and such duties within limits may be left to the board. It has also been recognized that sometimes the applicability of a statute may depend upon the existence or nonexistence of hypothetical facts, and determination of which is not feasible for the legislature. Consequently boards have been legitimately given fact-finding powers and rule-making powers to provide the details for enforcing existing law. Haggard v. Industrial Commission, 71 Ariz. 91, 223 P.2d 915.

Section 5 of the Act involved herein makes it the duty of the board to "formulate general policies affecting the public health." The formulation of policies is for the legislature and administrative rules must be within the framework of policies which the legislature has sufficiently defined. Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446. The portion of Section 6 supra which gives the board power by rule and regulation to "regulate sanitation and sanitary practices in the interests of public health" and to "protect and promote the public health and prevent disability and mortality" in effect cuts the traces and permits the board to wander with no guide nor criterion, with no channel through which its powers may

flow. It may flood the field with such sanitary laws as its unrestrained discretion may dictate. It may upon investigation discover what it might think are evil conditions and proceed to adopt whatever remedial legislation might suit its fancy. In fact, that is exactly what has been done under the regulations herein challenged and designated as Part XI of a "Sanitary Code". We think that the attempt by the legislature to make it the duty of the board to "formulate general policies affecting the public health" and to give the board unrestrained power to regulate sanitation and sanitary practices and promote public health and prevent disability and mortality is a constitutional relinquishment of its legislative power and to such extent is violative of constitutional principles, and the so-called Sanitary Code applicable to agricultural labor camps is void. We do not wish to be understood as declaring that Chapter 105, Session Laws 1941 is unconstitutional and void in its entirety, but only to the extent herein announced. The objectionable features mentioned are severable and do not poison the balance of the Act. The court may therefore leave the innocuous part unaffected by this decision. Gherna v. State, 16 Ariz. 344, 146 P. 494. This rule is applicable to statutes relating to administrative agencies. 42 Am.Jur., Public Administrative Law, Section 13, page 302.

It is stipulated of record that within the state there are maintained and operated various kinds of labor camps in connection with mining, lumber, railroad construction, etc.; that with the exception of the employment of the occupants no material difference exists between these other labor camps and agricultural labor camps. It is therefore contended that even if the board had the unlimited power to regulate labor camps, it would be an unconstitutional exercise thereof to single out camps employing only agricultural labor for the purpose of control. Since we hold that the regulations are illegal upon other grounds, it is unnecessary to discuss this and other points raised on the appeal.

Judgment affirmed.

STANFORD, C. J., and PHELPS, LA PRADE and UDALL, JJ., concur.