IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

—————————

**STEVE MONTENEGRO, ET AL.,**
*Plaintiffs/Appellants,*

*v.*

**ADRIAN FONTES, ET AL.,**
*Defendants/Appellees,*

and

**KRISTIN MAYES, ET AL.,**
*Intervenors/Appellees.*

—————————

No. CV-24-0166-PR
Filed September 29, 2025

—————————

Appeal from the Superior Court in Maricopa County
The Honorable Timothy J. Ryan, Judge
No. CV2023-011834
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
258 Ariz 109 (App. 2024)
**VACATED**

—————————

COUNSEL:

Kory Langhofer (argued), Thomas Basile, Statecraft PLLC, Phoenix,
Attorneys for Arizona House of Representative Speaker Steve Montenegro

Craig A. Morgan, Shayna Stuart, Taft Stettinius & Hollister LLP, Phoenix,
Attorneys for Secretary of State Adrian Fontes

Mary R. O'Grady, Eric M. Fraser (argued), Emma J. Cone-Roddy, Alexandria N. Karpurk, Osborn Maledon, P.A., Phoenix, Attorneys for Arizona Citizens Clean Elections Commission

Daniel J. Adelman, Chanele N. Reyes, Arizona Center for Law in the Public Interest, Phoenix, and David Kolker, Tara Malloy and Elizabeth D. Shimek, Campaign Legal Center, Washington, DC, Attorneys for Voters' Right to Know

Alexander W. Samuels (argued), Nathan T. Arrowsmith, and Luci D. Davis, Arizona Attorney General's Office, Phoenix, Attorneys for Arizona Attorney General Kristin K. Mayes

Nate Curtisi, Arizona Chamber of Commerce & Industry, Phoenix, Attorney for Amicus Curiae Arizona Chamber of Commerce & Industry

Dominic E. Draye, Greenberg Traurig, LLP, Phoenix, Attorneys for Amici Curiae Americans for Prosperity and Americans for Prosperity Foundation

Timothy Sandefur, Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix, Attorneys for Amicus Curiae Goldwater Institute

———————

JUSTICE BOLICK authored the Opinion of the Court, in which VICE CHIEF JUSTICE LOPEZ and JUSTICES BEENE, MONTGOMERY, and KING joined. CHIEF JUSTICE TIMMER and JUSTICE BERCH (Ret.)[1] dissented.

———————

JUSTICE BOLICK, Opinion of the Court:

¶1 The plaintiffs here are the leaders of the Arizona Senate and House of Representatives authorized by those bodies in a constitutional challenge to the Voters' Right to Know Act, a voter-approved statute that requires disclosure of certain contributions used for campaign media

_____

[1] Justice Maria Elena Cruz is recused from this matter. Pursuant to article 6, section 3 of the Arizona Constitution, Justice Rebecca White Berch (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

spending and confers extensive enforcement powers upon the Citizens Clean Elections Commission, a state agency. The legislative leaders claim they have standing to bring this action because the initiative's impermissible delegation of legislative powers harms the Legislature. They further argue that the challenged provisions are so inextricably entwined with the initiative as a whole that, despite a severability clause, their infirmity renders the entire measure void.

¶2 We hold that the legislative leaders have standing to challenge the initiative. However, we also hold that it is premature to determine the question of severability until a ruling on the constitutionality of the challenged provisions, which is not yet before us.

**BACKGROUND**

¶3 This case involves a constitutional challenge to the Voters' Right to Know Act. This statutory initiative established new campaign finance disclosure requirements designed to prevent "the practice of laundering political contributions," otherwise known as "dark money." *See* Voters' Right to Know Act, Proposition 211, § 2(C) (2022) (hereafter "Prop. 211" or "the Act") (codified at A.R.S. §§ 16-971 to -979).

¶4 Under Prop. 211, "covered persons" who spend "more than $50,000 in statewide campaigns or more than $25,000 in any other type of campaigns" must disclose to the Secretary of State the identities of donors who contribute more than $5,000 toward campaign media spending in an election cycle. §§ 16-971(7), -973(A). These disclosures are made available to the public and are reported to the Citizens Clean Elections Commission (the "Commission"). § 16-973(H).

¶5 "The [C]ommission is the primary agency authorized to implement and enforce [Prop. 211]." § 16-974(A). As relevant here, the Commission's enforcement authority empowers it to "[a]dopt and enforce rules," "[i]nitiate enforcement actions," and "[p]erform any other act that may assist in implementing [title 16, chapter 6.1]." § 16-974(A)(1), (3), (8). The Commission has since promulgated several rules under Prop. 211, which are not at issue here. *See* Ariz. Admin. Code R2-20-801 to -813.

¶6 "The [C]ommission's rules and any [C]ommission enforcement actions pursuant to this chapter are not subject to the approval of or any prohibition or limit imposed by any other executive or legislative

governmental body or official." § 16-974(D). The Commission's rules and enforcement actions are also otherwise exempt from the Administrative Procedure Act. *Id.* Additionally, "[t]o the extent the provisions of [Prop. 211] conflict with any state law, [Prop. 211] governs." § 16-978(B).

¶7        Prop. 211 further specifies that its "provisions . . . are severable." Prop. 211 § 4. Thus, "[i]f any provision of this act or application of a provision to any person or circumstance is held to be unconstitutional, the remainder of this act, and the application of the provisions to any person or circumstance, shall not be affected by the holding." *Id.* In that instance, "[t]he invalidated provision or provisions shall be deemed reformed to the extent necessary to conform to applicable law and to give the maximum effect to the intent of this act." *Id.*

¶8        After Arizona voters approved Prop. 211, the House Speaker and Senate President (the "Leaders") initiated a facial challenge to Prop. 211's constitutionality against the Secretary of State and the Commission. Each legislative chamber authorized the Leaders to act on behalf of the Legislature by adopting rules authorizing them to assert claims on each chamber's behalf. The Arizona Attorney General and the political action committee that sponsored Prop. 211 intervened in the case to defend the measure. We refer to the Secretary of State, the Commission, the Attorney General, and Voters' Right to Know (which sponsored Prop. 211) collectively as the "Defendants."

¶9        The Leaders sought relief under the Uniform Declaratory Judgments Act ("UDJA"). They claimed that Prop. 211 violated constitutional separation of powers, Arizona Constitution article 3, the nondelegation doctrine, and the Voter Protection Act ("the VPA"), Arizona Constitution article 4, part 1, § 1(6)(B)–(C). The Leaders also alleged that three of the Commission's rules promulgated under Prop. 211 "redefine both individual terms and the overall scope of the Act." *See* R2-20-801(B) (omitting certain campaign activities from reporting requirements), -803(D)–(E) (outlining additional procedures for donors to "opt out"), -808 (authorizing the Commission to issue advisory opinions).

¶10        The Leaders subsequently moved for a preliminary injunction. The superior court denied the Leaders' motion, finding that (1) the Commission had not taken any enforcement action under Prop. 211, and thus, the Leaders failed to allege a specific injury caused by the

Commission; and (2) there was insufficient evidence that the Legislature intended to introduce a bill "that may affect" Prop. 211 or that legislators declined to take action due to "supposed uncertainty about Prop. 211." *Toma v. Fontes*, No. CV 2023-011834 at *4 (Maricopa Cnty. Super. Ct. Dec. 29, 2023).

¶11 The Defendants also filed separate and joint motions to dismiss, contending that the Leaders lacked standing, failed to demonstrate any injury to the Legislature's authority, and failed to state a claim for relief. The superior court denied the Defendants' motions, resolving that "the more effective and efficient way to deal with the issue" was to allow the Leaders to cure any defects in their pleading. *Id.* at *2.

¶12 The Leaders appealed the superior court's denial of injunctive relief. The court of appeals found that the Leaders lacked standing to challenge the entire chapter, but that they had standing to challenge § 16-974(D) to the extent it prevented the Legislature from passing any law prohibiting or limiting the Commission's rules or enforcement actions. *Toma v. Fontes*, 258 Ariz. 109, 120–22 ¶¶ 40–45, 50–53 (App. 2024). The court held that this portion of § 16-974(D) was unconstitutional but severable and that the remaining provisions of Prop. 211 were enforceable. *Id.* at 125–26 ¶¶ 73, 80–81, 84–86.

¶13 As a result, the court of appeals reversed the superior court's denial of a preliminary injunction in part, enjoining the "Defendants and their agents . . . from enforcing § 16-974(D) to prohibit the Legislature from passing legislation prohibiting or limiting the Commission's rules or enforcement actions." *Id.* at 127 ¶ 92.

¶14 Defendants filed a petition for review, which this Court granted to determine the following rephrased issues: (1) Do the Legislative Leaders have standing to challenge § 16-974(A) and the rules flowing from that delegation; and (2) Is § 16-974(D) severable from Prop. 211? These are issues of broad public significance. The Court has jurisdiction over this lawsuit pursuant to article 6, § 5(3) of the Arizona Constitution.

## DISCUSSION

¶15 As the issues present purely questions of law, we review the decisions below de novo. *Roberts v. State*, 253 Ariz. 259, 264 ¶ 7 (2022). We address standing and severability in turn.

### 1. Standing

¶16        The Leaders' approach toward this lawsuit has shifted over the course of this litigation.  Initially, they characterized it as a facial challenge to Prop. 211.  A facial challenge requires the challenger to demonstrate that the act cannot be constitutionally enforced under any set of circumstances. *AZ Petition Partners LLC v. Thompson*, 255 Ariz. 254, 258 ¶ 17 (2023).  As the case appears before us, however, the Leaders focus on specific provisions of the law that they contend violate separation of powers, and they assert that the invalid provisions render the entire Act unconstitutional.  Regardless, we must determine whether they have standing to challenge the law.

¶17        Our Constitution differs from the United States Constitution in significant ways.  Two distinguishing provisions, which are express in one but not the other, are especially pertinent here.  First, the Arizona Constitution lacks a "case or controversy" requirement, which is the foundation of the standing doctrine. *Bennett v. Napolitano*, 206 Ariz. 520, 525 ¶ 19 (2003).  But although separation of powers is implicit in the Federal Constitution, it is express in the Arizona Constitution. *Roberts*, 253 Ariz. at 268 ¶ 32 ("What the United States Constitution structurally implies, the Arizona Constitution makes explicit.  Our constitution's framers devoted an entire article to separation of powers . . . ."); *see also Bennett*, 206 Ariz. at 525 ¶ 19 (highlighting these constitutional differences).

¶18        The consequence of not having a case or controversy requirement in our Constitution is that in Arizona, standing is a prudential consideration rather than a mandatory prerequisite to suit. *Fay v. Fox*, 251 Ariz. 537, 541 ¶ 22 (2021).  Surely, the parties here are adversarial to each other over the issues in the lawsuit and have fully, vigorously, and capably argued the law. So we clearly have a case or controversy in the literal sense of the term. *See generally Mills v. Ariz. Bd. of Tech. Registration*, 253 Ariz. 415, 423 ¶ 23 (2022) (explaining that the doctrines of standing and ripeness ensure, in part, "that issues be fully developed between true adversaries" (quoting *City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 209 ¶ 8 (2019))).  Moreover, the Leaders proceed under the Uniform Declaratory Judgments Act, which among other things gives the courts "power to declare rights, status, and other legal relations."  A.R.S. § 12-1831.  This is precisely what the Leaders seek from us here.

**¶19** But usually, especially when we are resolving disputes between branches of government, we have also required some showing of a particularized injury to establish standing. *See, e.g.*, *Brewer v. Burns*, 222 Ariz. 234, 237 ¶¶ 11–12 (2009). For purposes of determining standing, we assume that the plaintiffs are correct on the merits, *id.* at 237–38 ¶ 14, although that is not a binding or even preliminary determination. Moreover, because it is a prudential doctrine rather than a constitutional mandate, we can waive standing. *See Fay*, 251 Ariz. at 541 ¶ 22. Here, as will appear, it is unnecessary to do so because the Leaders have clearly alleged particularized injury sufficient to confer standing.

**¶20** The Leaders point to several Prop. 211 provisions that they contend, in tandem, impermissibly transfer legislative power to the Commission. A.R.S. § 16-974 provides an array of powers to the Commission to implement and enforce the measure. In addition to adopting rules, initiating enforcement actions, imposing penalties for noncompliance, and so on, the Commission is empowered to "[p]erform any other act that may assist in implementing this chapter." § 16-974(A)(8). The statute further provides that the "[C]ommission's rules and any [C]ommission enforcement actions pursuant to this chapter are not subject to the approval of or any prohibition or limit imposed by any other executive or legislative governmental body or official." § 16-974(D). The statute directs that "[t]o the extent the provisions of this chapter conflict with any state law, this chapter governs." § 16-978. As noted, the court of appeals enjoined § 16-974(D) but held that the Leaders lacked standing to challenge the other provisions of the statute.

**¶21** The Leaders allege that these provisions constitute a broad, standardless delegation of authority to the Commission, an executive agency. Under the Arizona Constitution, "[t]he legislative authority of the state shall be vested in the legislature," and in the people acting by initiative or referendum. Ariz. Const. art. 4 § 1. The power of the people to initiate laws is coextensive with the power of the Legislature to enact them. *Roundtree v. City of Page*, 573 P.3d 65, 70 ¶ 21 (Ariz. 2025). However, separation of powers limits the delegation of legislative power to the executive branch. Ariz. Const. art. 3.

**¶22** In *Roberts*, the Court considered whether general language in a statute implicitly authorized a state agency to adopt by rule the federal Fair Labor Standards Act, its implementing regulations, agency guidances,

and applicable federal judicial decisions. 53 Ariz. 259, 1012 ¶ 7. We held it did not. *Id.* at 266–67 ¶¶ 19–26. Relevant to the issue here, we observed that "[s]eparation of powers limits both the power that may be delegated and the method by which it is delegated from the legislative branch to the executive." *Id*. at 268 ¶ 29. To delegate implementing authority requires that the Legislature (here, the people) supply an "intelligible principle" to guide the agency's discretion. *Id.* at 268 ¶ 31 (quoting *Gundy v. United States*, 588 U.S. 128, 135–36 (2019)). Put differently, "[t]he [L]egislature must first make the policy choice, then it may delegate to [the agency] the power to implement it." *Id.* at 270 ¶ 43; *see also State ex rel. Woods v. Block*, 189 Ariz. 269, 275 (1997) (explicating the distinctive powers of the legislative and executive branches).

¶23 Likewise, in *State v. Marana Plantations, Inc.*, the Court held that a statute investing the state Board of Health with the power to formulate policies affecting public health, and to regulate sanitation practices to promote public health, without limits or guides, violated separation of powers. 75 Ariz. 111, 114 (1953). The Court observed that although both the Legislature and the people may enact laws, "[i]t is fundamental that the legislative power thus entrusted cannot be relinquished nor delegated." *Id.* (citing, *inter alia*, *Tillotson v. Frohmiller*, 34 Ariz. 394 (1928)). The Court held that "a statute which gives unlimited regulatory power to a commission, board or agency with no prescribed restraints nor criterion nor guide to its action offends the Constitution as a delegation of legislative power." *Id.* This type of open-ended delegation of legislative power to the Commission by Prop. 211 is precisely what the Leaders allege violates the Constitution here. As such, it is a "constitutional relinquishment of the legislative power," *id.* at 115, which as alleged occasions an institutional injury.

¶24 Nor does the fact that the measure was passed by the people rather than the Legislature alter the analysis. The constitutional reservation to the people of the powers of initiative and referendum "do[es] not in any way affect the division of powers; they remain the same. The people cannot by an initiated law, any more than the Legislature can by an act passed by it, delegate their powers to make laws to an agent or executive or administrative body." *Tillotson*, 34 Ariz. at 401.

¶25 Thus, the Leaders unquestionably state a separation of powers claim regarding the Prop. 211 provisions set forth above. The measure purports to give the Commission carte blanche authority to perform any act in furtherance of the measure, without limitation or prohibition by the Legislature, and to establish hegemony for agency rules over contrary statutes.

¶26 Notwithstanding any potential separation of powers issues down the road, Defendants argue that the Legislature has suffered no injury—and hence has no standing—because the Commission has yet to take actions that invade the Legislature's prerogative or inhibit its exercise of legislative power.

¶27 Again, *Roberts* supplies the response: "the legislative power is inalienable." 253 Ariz. at 270 ¶ 43; *see Inalienable*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/inalienable (last visited September 7, 2025) (defining "inalienable" as "incapable of being alienated, surrendered, or transferred"); *see also Marana Plantations*, 75 Ariz. at 114 (instructing that the legislative authority of the state "cannot be relinquished nor delegated"); *Loftus v. Russell*, 69 Ariz. 245, 255 (1949) (explaining that the power to legislate is reserved for the people and the legislature). As the Court stated categorically in *Hernandez v. Frohmiller*, "[i]t is axiomatic that neither the [L]egislature nor the people can delegate to an administrative board the power to legislate." 68 Ariz. 242, 254 (1949). The Leaders' complaint alleges that Prop. 211 does exactly that. The alleged injury, therefore, is not the *exercise* of legislative authority by the Commission, nor any limitation imposed by the Commission on the Legislature's ability to legislate in this area of public policy, but rather the *delegation* of legislative power to an executive agency.

¶28 As our cases abundantly demonstrate, the Legislature has standing to challenge actions that inflict institutional injury. Defendants rely heavily on *Bennett*, in which the Court ruled that individual legislators did not have standing to challenge certain line-item vetoes by the Governor. The legislators themselves did not claim injury as their votes were not nullified. 206 Ariz. at 526 ¶ 26. Pertinent here, where "a claim allegedly belongs to the Legislature as a whole," four legislators could not allege institutional injury "without the benefit of legislative authorization." *Id.* at 527 ¶ 29. Here, by contrast, the Leaders indisputably *do* have authorization to sue on behalf of the Legislature.

¶**29**  Perhaps most on point is *Forty-Seventh Legislature v. Napolitano*, in which the Legislature as a whole challenged the Governor's veto of a portion of a state employee compensation bill. 213 Ariz. 482, 484 ¶ 4-6 (2006). The Court distinguished *Bennett* on the ground that the legislature "alleged a particularized injury to the legislature as a whole." *Id.* at 486 ¶ 14. The Governor argued that the Legislature nonetheless lacked standing because it had not attempted to override her veto. The Court concluded that "[t]he existence of the injury does not depend upon and is not affected by whether the Legislature attempted to override her veto." *Id.* at 487 ¶ 17.

¶**30**  Similarly, even under the more stringent standing requirements under the Federal Constitution, the U.S. Supreme Court recognized legislative standing under circumstances similar to the present case. In *Arizona State Legislature v. Arizona Independent Redistricting Commission*, the Legislature argued that a citizen initiative giving redistricting power to a state agency deprived it of its federal constitutional authority over redistricting. 576 U.S. 787, 792–93 (2015). Although the Court upheld the voter measure on the merits, the Court concluded unanimously that the Legislature had standing to challenge it. As it argues here, the Legislature alleged that the initiative would countermand its authority, which the Court characterized as "an institutional plaintiff asserting an institutional injury." *Id.* at 802. As here, the Legislature did not seek to assert its authority in a way that contravened the initiative. "To assert standing," the Court concluded, "the Legislature need not violate the Arizona Constitution." *Id.*

¶**31**  Other Arizona decisions are to similar effect. In *Brewer*, the Governor argued that the Legislature violated the Constitution by withholding finally passed bills from her review. 222 Ariz. 234, 236 ¶¶ 4-5 The Court held that the Governor had standing because she had "plausibly *alleged* particularized injury," whereas the Legislature's argument to the contrary went to the merits, and "defendants cannot defeat standing merely by assuming they will ultimately win." 222 Ariz. at 238 ¶ 14.

¶**32**  In *Biggs v. Cooper ex rel. County of Maricopa*, a group of legislators was found to have standing to contest the adoption of a law by a majority of the Legislature rather than a supermajority, because they had sufficient votes to have blocked the measure if a supermajority was

required. 236 Ariz. 415, 420 ¶¶ 18–19 (2014). The defendants argued that the legislators had not sought to attempt to repeal the law or refer it to the voters; however, once again, the Court emphasized that "the plaintiff legislators need not exhaust all alternative political remedies before filing suit." *Id.* at 419 ¶ 17 (citing *Forty-Seventh Legislature*, 213 Ariz. at 487 ¶ 17); *accord Coleman v. Miller*, 307 U.S. 433, 438 (1939) (holding that a majority of state senators challenging the lieutenant governor's tiebreaking vote "have a plain, direct and adequate interest in maintaining the effectiveness of their votes").

¶33 The dissent urges a more stringent rule on standing in order to prevent the Court from entangling in political and policy disputes. For better or worse, we are called upon—and do—decide "political" disputes a great deal, but only when they present tangible constitutional questions. *Ariz. Republican Party v. Richer*, 257 Ariz. 237 (2024) (election law challenge); *State ex rel. Brnovich v. Ariz. Bd. of Regents*, 250 Ariz. 127 (2020) (state constitutional claims). By contrast, we do not decide policy questions, and none are presented here. The Leaders assert a serious separation of powers dispute; and as abundantly illustrated by the cases cited by both the majority and dissent raising such issues, that presents a constitutional rather than a political or policy question.

¶34 The dissent also contends the asserted injury is not tangible or ripe because the Commission has not yet exercised its delegated authority in a way that violates separation of powers. That is akin to arguing that if your credit card is stolen, you can file suit only when the thief uses it. Simply put, the Leaders assert an inalienable power has been alienated. They need not challenge it use-by-use. The legislative power belongs solely to the Legislature and the people. If it is given away, in whole or part, it presents an institutional injury that creates standing. *See, e.g.*, *Ariz. State Legislature*, 576 U.S. at 802.

¶35 Defendants also argue that the VPA countermands the Leaders' arguments. The VPA is a constitutional provision enacted by the people providing that any statute passed by popular vote may not be superseded by the Legislature except upon three-fourths vote by both chambers and then only if the change advances the measure's purposes. Ariz. Const. art. 4, pt. 1, § 1(14). The Legislature may freely supersede its own statutes but not those passed by the voters.

¶36        Defendants urge that the VPA weighs against the Leaders' claims because it is as much a part of the Constitution as separation of powers.  That it is.  But Defendants misapprehend the role the VPA plays in protecting legislation passed by the people.  The VPA cannot cure a statute passed at the ballot of its constitutional infirmities.  Because the people, just like the Legislature, cannot enact a law that transgresses separation of powers, only laws passed within their authority can be shielded by the VPA against modification.  Separation of powers and the VPA essentially combine as a constitutional two-step:  the first defines what the three branches of government (including the people acting in their legislative capacity) can do; the second protects valid laws enacted by the people.  The VPA does not enlarge the constitutional authority of the people; it only protects their valid legislative handiwork against legislative modification.  In that regard, it provides an extra layer of separation of powers, shielding popular enactments against alteration by the people's elected representatives.

¶37        Defendants also assert that one of the provisions the Leaders challenge, § 16-978(B), is largely a restatement of the VPA because it provides that when any conflict arises from the Act and other law, the Act prevails.  That is untrue, given that the VPA limits only legislative actions that amend or supersede a statute passed by the voters. *Cave Creek Unified Sch. Dist. v. Ducey*, 233 Ariz. 1, 4 ¶ 9 (2013).  It does not address conflicts between a voter-approved law and other laws and indeed provides that "[t]his section shall not be construed to deprive the [L]egislature of the right to enact any measure" except by the limitations specified.  Ariz. Const. art. 4, pt. 1, § 1(14).

¶38        Regardless, both of Defendants' VPA arguments go to the merits of the Leaders' claims, not to their standing.  We express no view on the merits.   But because the Leaders have alleged on behalf of the Legislature a direct and tangible stake in the outcome of the litigation, they have standing to pursue it. *See Fay*, 251 Ariz. at 541 ¶ 22 ("No injury is more palpable or direct than infringement of a constitutional right.").  For that reason, we need not consider whether to waive this prudential requirement.

## 2.  Severability

¶39        Notwithstanding that the Act contains a severability clause stating that if any provisions are invalidated the remaining provisions will remain in effect, the Leaders contend that removing the unconstitutional

provisions would render the Act as a whole unworkable, and therefore the Act must be struck down in its entirety. Defendants respond that even if the challenged provisions are declared unconstitutional, the remainder of the law is entirely workable, especially given that the severed provisions are ancillary to the principal subject-matter of the Act, which is donor disclosure.

¶40        The Court set forth the standard for determining severability of provisions in voter-approved ballot measures in *Randolph v. Groscost*: "We will first consider whether the valid portion, considered separately, can operate independently and is enforceable and workable. If it is, we will uphold it unless doing so would produce a result so irrational or absurd as to compel the conclusion that an informed electorate would not have adopted one portion without the other." 195 Ariz. 423, 427 ¶ 15 (1999).

¶41        A determination of severability is premature before a ruling is made on whether, and to what extent, provisions of the Act are unconstitutional. The merits are not before us, and we will not consider severability in the abstract. The Leaders make a novel argument that we should apply a presumption against severability, even where the voters have enacted a severability provision as part of the measure. We will not entertain such an argument nor consider whether *Randolph* should be modified in any way, unless and until such questions are properly before us.

## ATTORNEY FEES

¶42        Plaintiffs request attorney fees pursuant to A.R.S. §§ 12-341, -348, -348.01, -1840, and the private attorney general doctrine. Defendants request attorney fees pursuant to § 12-348.01. As neither party has yet prevailed, that issue is premature as well.

## CONCLUSION

¶43        We reverse the trial court's decision, vacate the court of appeals' decision, and remand to the trial court for further proceedings.

13

TIMMER, C.J., joined by BERCH, J. (Ret.), Dissenting.

¶44        For decades we have steadfastly required a party seeking relief in our courts to "allege a distinct and palpable injury." *Sears v. Hull*, 192 Ariz. 65, 69 ¶ 16 (1998). This standing requirement reflects judicial restraint, ensuring courts avoid advisory opinions, resolve ripe—not hypothetical—controversies, and adjudicate disputes between genuine adversaries. *See Mills v. Ariz. Bd. of Tech. Registration*, 253 Ariz. 415, 423 ¶ 23 (2022). By permitting the legislative leaders ("Leaders") to challenge the constitutionality of A.R.S. § 16-974(A) without the Legislature first suffering injury, the majority departs from this precedent, simultaneously diminishing the constitutionally granted legislative authority of our citizens (the "People") and risking court entanglement in future political and policy disputes. Consequently, and with great respect for my colleagues, I dissent.

¶45        The defendants did not seek review of the court of appeals' decision that § 16-974(D) violates the Constitution. Thus, whether the Leaders have standing to challenge § 16-974(D) is not before us. I concur with the majority's decision to remand this matter to the trial court to decide in the first instance whether that provision is severable.

¶46        Section 16-974(A) authorizes the Citizens Clean Elections Commission to "implement and enforce" the Voters' Right to Know Act by taking several actions, including "[a]dopt[ing] and enforc[ing] rules" and "[p]erform[ing] any other act that may assist in implementing this chapter." *See* § 16-974(A)(1), (8). The Legislature frequently empowers executive agencies, commissions, boards, and others to adopt and enforce rules.[2] Similarly, it is not uncommon for the Legislature to include catch-all regulatory provisions like § 16-974(A)(8) to assist these entities in implementing laws.[3] Both types of provisions are permissible under our

---

[2] *See, e.g.*, A.R.S. §§ 3-912(A) ("The director shall adopt rules to enforce this chapter . . ."); 36-2023(A) ("The department shall adopt and enforce rules . . ."); 44-1231.04 ("The attorney general shall adopt necessary rules to implement and enforce the provisions of this article.").

[3] *See, e.g.*, A.R.S. §§ 28-7673(D) ("The board and the department may . . . do any other act necessary or appropriate to carry out the purposes of this article . . ."); 40-336 ("The commission may . . . require the performance [by

Constitution as long as they do not transfer legislative authority to the executive or judicial branches in violation of separation of powers. *See* Ariz. Const. art. 3; *see also Roberts v. State*, 253 Ariz. 259, 268 ¶ 29 (2022) ("[T]here are some 'important subjects, which must be entirely regulated by the legislature itself' and others 'of less interest, in which a general provision may be made, and power given to others to fill up the details.'" (quoting *Wayman v. Southard*, 23 U.S. 1, 20 (1825))); *State v. Marana Plantations, Inc.*, 75 Ariz. 111, 114 (1953) (acknowledging the difficulty in marking the "boundary between administrative and legislative power" but concluding "that a statute which gives unlimited regulatory power to a commission, board or agency with no prescribed restraints nor criterion nor guide to its action offends the Constitution as a delegation of legislative power.").

¶47 The Leaders allege that § 16-974(A)(1) and (A)(8) unconstitutionally transfer legislative power to the Commission. But even if they are correct, that is not enough to confer standing. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n,* 576 U.S. 787, 800 (2015) (stating standing "in no way depends on the merits" of the claim (quoting *Warth v. Seldin,* 422 U.S. 490, 500 (1975))). They must "plausibly allege[]" a particularized injury from § 16-974(A)'s enactment. *See Brewer v. Burns*, 222 Ariz. 234, 238 ¶ 14 (2009). In my view, they have not done so, making their claims premature.

¶48 Nothing in § 16-974(A)(1) or (A)(8) prevents the Legislature from exercising its power or interferes with any legislative action. Notably, the Leaders do not allege that the Commission has promulgated any rules or taken other actions that usurp the legislative function. The Commission may or may not use the authority granted by § 16-974(A)(1) and (A)(8) to exercise legislative power. If it does, affected parties, which may include the Legislature, can then challenge the Commission's action and § 16-974(A)(1) or (A)(8) as violating the separation-of-powers and non-delegation doctrines. *See Marana Plantations*, 75 Ariz. at 115 (finding agency regulations illegal that were based on a statute improperly delegating legislative authority). But until then, any future injury from

public services corporations] of any other act which health or safety requires."); 41-743(B)(3)(j) ("The director shall . . [a]dopt rules . . . [that] include . . . [a]ny other aspects of personnel administration as determined by the director."); 48-558(A) ("The governing body shall provide an appropriate procedure . . . for any other act or thing which may become necessary or proper to carry out the intent and purpose of" listed statutes).

§ 16-974(A)(1) and (A)(8) is speculative, and the Leaders therefore lack standing to challenge it. *See Mills*, 253 Ariz. at 425 ¶ 31; *Ariz. Creditors Bar Assoc., Inc. v. State*, 257 Ariz. 406, 410 ¶ 14 (App. 2024). Thus, this case is unlike ones in which the Legislature possessed standing to challenge a law because it realized an immediate, tangible injury. *See Ariz. Indep. Redistricting Comm'n*, 576 U.S. at 793 (concluding the Arizona Legislature had standing to challenge a voter-enacted law because it deprived the Legislature of authority to draw congressional districts); *Forty-Seventh Legislature v. Napolitano*, 213 Ariz. 482, 486–87 ¶¶ 14–15 (concluding the Legislature sustained institutional injury when the Governor's line-item veto overrode the Legislature's right to have the votes of a majority rather than a supermajority given effect); *see also Brewer*, 222 Ariz. at 237–38 ¶¶ 12–14 (deciding the Governor had standing because she alleged that the Legislature's failure to transmit finally passed bills prevented her from approving or vetoing those bills).

**¶49** The majority reaches a contrary decision, agreeing with the Leaders that the Legislature suffers an institutional injury if § 16-974(A)(1) and (A)(8) is found to delegate legislative authority to the Commission to perhaps act in the future in a way that might infringe on the legislative prerogative. *See supra* ¶ 27. My colleagues reason that "legislative power is inalienable," and therefore "[it] is not the *exercise* of legislative authority" but "the *delegation* of legislative power to an executive agency" that inflicts injury on the Legislature. *See supra* ¶ 27. I strongly disagree.

**¶50** First, the fact legislative power is inalienable does not mean that delegation of that power immediately results in injury. Until that power is impermissibly *exercised* by another branch, a separation-of-powers violation does not occur, and the Legislature is not injured. *See* Ariz. Const. art. 3 (providing that each branch of government "shall [not] *exercise* the powers properly belonging to either of the others" (emphasis added)). Any illegal exercise of legislative authority by the Commission here is currently theoretical; no constitutional violation has yet occurred, and any injury is thus speculative. *See Mills*, 253 Ariz. at 425 ¶ 31 (concluding that plaintiff's claim that two statutes "combine[d] to establish an unconstitutional delegation of judicial power to an administrative board" was not ripe for declaratory relief because the board had not initiated proceedings against the plaintiff, making the claim speculative).

**¶51** The majority likens the delegation of legislative authority to a stolen credit card that the thief has not yet used. *See supra* ¶ 34. My

colleagues argue that just as the theft victim can sue the thief, the Legislature has standing to sue here even though the Commission has not exercised legislative authority. *See id.* Catchy, but the analogy falls apart upon inspection. Unlike the credit card thief, the Commission has not taken anything or violated a law. It was simply delegated authority by the People, acting in their legislative capacity. At most, the Commission is only poised to take legislative authority. Until the Commission exercises that authority, however, it is more like a person who is given an opportunity to steal a credit card but has not yet done so. And just as the would-be victim lacks standing to sue that thief, so do the Leaders here.

**¶52** Tellingly, in cases the majority relies on, *see supra* ¶¶ 29–32, the Legislature, Governor, or bloc of representatives experienced an immediate, tangible injury as a result of the complained-of action and consequently possessed standing to challenge the action. *See Ariz. Indep. Redistricting Comm'n*, 576 U.S. at 793 (loss of "authority to draw congressional districts"); *Biggs v. Cooper*, 236 Ariz. 415, 419 ¶ 13 (2014) (negation of bloc of representatives' votes that were otherwise sufficient to defeat enactment of law); *Brewer*, 222 Ariz. at 237–38 ¶¶ 12–14 (loss of ability to veto "finally passed bills"); *Forty-Seventh Legislature*, 213 Ariz. at 486 ¶¶ 13–15 (2006) (loss of "right to have the votes of a majority given effect" after being overridden by a line-item veto). There is no such actual or threatened injury here because the Commission has not exercised any authority under § 16-974(A)(1) or (A)(8) in a manner that allegedly injures the Legislature. Unless and until that occurs, any harm from the mere existence of § 16-974(A)(1) or (A)(8) is too generalized to support standing. *See Mills*, 253 Ariz. at 423 ¶ 24 (stating that "a generalized harm shared by all" is generally insufficient to confer standing).

**¶53** Second, granting standing here upsets the constitutional balance between the Legislature and the People, who share coequal lawmaking power. *See* Ariz. Const. art. 4, § 1; *Roundtree v. City of Page*, 573 P.3d 65, 70 ¶ 21 (Ariz. 2025). Recognizing legislative standing without tangible injury elevates the Legislature above the People, allowing it to challenge voter-enacted laws merely because it disagrees with how the People chose to exercise their share of authority. This is something the People could never do in return. *See Mills*, 253 Ariz. at 423 ¶ 24 (disallowing standing for "generalized harm" suffered by all).

**¶54**          Third, the majority's analysis, with respect, is incautious. Although standing and ripeness are prudential doctrines, we should rigorously apply them in challenges by the Legislature against laws enacted by the People.  The Voter Protection Act ("VPA") enshrined in our Constitution reflects the People's will that the Legislature cannot repeal or easily change laws enacted by initiative or referendum.  *See* Ariz. Const. art. 4, pt. 1, § 1(6)(B).  Thus, we should insist that the Legislature allege actual or imminently threatened injury from a voter-enacted law before we adjudicate whether to void that law—an action the VPA explicitly prohibits the Legislature from taking on its own.  Otherwise, we risk both violating the will of the People and being drawn into political and policy disputes between the People and the Legislature.  *Cf. Bennett v. Napolitano*, 206 Ariz. 520, 525 ¶ 20 (2003) ("Without the standing requirement, the judicial branch would be too easily coerced into resolving political disputes between the executive and legislative branches, an arena in which courts are naturally reluctant to intrude."); *see also Raines v. Byrd*, 521 U.S. 811, 819–20 (1997) ("[O]ur standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional.").

**¶55**          Here, the majority grants the Leaders automatic standing merely because they allege a potential, future violation of the separation-of-powers and non-delegation doctrines.  This is imprudent. Doing so unlocks a door for future Legislatures seeking to make an end-run around the VPA in an attempt to void laws enacted by initiatives and referenda by merely alleging a plausible separation-of-powers or non-delegation violation based on theoretical, future events.  Because this may thwart the People's will, we should require a tangible injury to the Legislature before granting it standing to challenge voter-enacted laws.

**¶56**          In sum, I conclude the trial court correctly refused to preliminarily enjoin § 16-974(A) because at this time the Leaders are not likely to prevail on the merits.  The Leaders do not have standing, and the challenge is premature.